FRED I. LAMSON & others *vs.* SECRETARY OF THE
COMMONWEALTH
(and a companion case[1]).

Suffolk.    June 21, 1960. — June 29, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE,
& CUTTER, JJ.

*Constitutional Law,* Reapportionment of districts, Who may question
constitutionality, Public rights and interests, Elections.    *General Court.*
*Mandamus.    Practice, Civil,* Parties.    *Public Duty.    Boundary.    Mu-*
*nicipal Corporations,* Boundary, Wards.    *Elections.    Newton.    Words,*
"General Court," "Territory."

Mandamus was an appropriate remedy to prevent the Secretary of the
Commonwealth from preparing ballots under allegedly unconstitutional
St. 1960, c. 432, dividing the State into new senatorial and councillor
districts.    [267]

Residents of and legal voters in areas of a city especially affected by
St. 1960, c. 432, in using for a reapportionment of senatorial and
councillor districts wards with boundaries different from those of the
wards underlying the existing representative districts were proper
parties to bring a mandamus proceeding to prevent the Secretary of
the Commonwealth from preparing ballots under c. 432.    [267]

A petition by a citizen and legal voter of Massachusetts for a writ of
mandamus ordering the Secretary of the Commonwealth to refrain
from preparing ballots under St. 1960, c. 432, establishing new senatorial
and councillor districts, on the ground that the statute was uncon-
stitutional, was for protection of the petitioner's rights as a citizen and
was also for performance of a public duty in which the people had an
interest, so that it was not necessary for the petitioner to show that he
had suffered special legal harm.    [267–268]

In the provisions of articles 21 and 22 of the Amendments to the Con-
stitution, as appearing in art. 71, respecting reapportionment of repre-
sentatives and of senatorial and councillor districts following a special
decennial enumeration of the legal voters in each city and town, the
requirement that the General Court shall reapportion "at its first regu-
lar session after the return" of the enumeration is not merely directory
but plainly states an obligation to comply at the specified time.    [269]

_____

[1] The companion case is Donald L. Gibbs & others *vs.* Secretary of the
Commonwealth.

Lamson *v.* Secretary of the Commonwealth.

The General Court, after having failed to make a reapportionment of representatives and of senatorial and councillor districts "at its first regular session" after the return of a special enumeration of voters in accordance with arts. 21 and 22 of the Amendments to the Constitution, as appearing in art. 71, has power to make such reapportionment at a subsequent session held prior to a further enumeration.   [269]

Under arts. 21 and 22 of the Amendments to the Constitution, as appearing in art. 71, reapportionment of representative districts and reapportionment of senatorial and councillor districts substantially at one time is intended, but nevertheless a reapportionment of senatorial and councillor districts was effective without a reapportionment of representative districts.   [274]

St. 1960, c. 432, dividing the State into new senatorial and councillor districts, was enacted a sufficient time before the elections in 1960 so that there was no violation of art. 8 or art. 9 of the Declaration of Rights of the Constitution.   [274]

The word "territory" in article 22 of the Amendments to the Constitution, in the form appearing in art. 71, respecting division of the State into new senatorial districts of "contiguous territory" includes water spaces, so that two municipalities having their only common boundary line in tide water between their land areas were "contiguous" within the meaning of the article.   [275]

St. 1960, c. 432, was not invalid in that, in establishing new senatorial and councillor districts, it apportioned among them, without dividing a ward, the eight wards into which the city of Newton had been divided by ordinance on December 20, 1954, pursuant to St. 1954, c. 532, and G. L. c. 54, §§ 1–5, and which were the basis of the special decennial enumeration of legal voters made in the city in 1955, although that ordinance had increased the number of wards in the city from seven to eight and no new representative districts were established at the same time as the establishment of the senatorial and councillor districts; St. 1960, c. 432, superseded G. L. c. 54, § 4, so far as § 4 precluded such establishment of new senatorial and councillor districts on the basis of the eight new wards.   [276–278]

The special decennial enumeration of legal voters in cities as required by articles 21 and 22 of the Amendments to the Constitution, as appearing in art. 71, must be made in accordance with wards as newly divided by the cities in the preceding December under G. L. c. 54, § 1.   [277]

Two PETITIONS for writs of mandamus filed in the Supreme Judicial Court for the county of Suffolk on June 3, 1960, and June 6, 1960, respectively.

The cases were reserved and reported by *Cutter,* J., without decision.

*Francis L. Lappin,* (*Matthew S. Heaphy, Harris A. Reynolds, Sidney A. Aisner, & Jason A. Aisner* with him,) for Lamson and others.

*Matt B. Jones,* City Solicitor, for Gibbs and others.

*Leo Sontag & James J. Kelleher,* Assistant Attorneys General, (*Charles H. McGlue,* Special Assistant Attorney General, with them,) for the respondent.

WHITTEMORE, J.   The petitioners in each case seek a writ of mandamus to order that the Secretary of the Commonwealth do not prepare ballots under the recent enactment (St. 1960, c. 432) which reapportions the senatorial and councillor districts of the Commonwealth.   The cases were reserved and reported by a single justice on the amended petitions, the answers, and amended statements of agreed facts.

Each of the several petitioners in the *Lamson* case is a citizen of the Commonwealth and a legal voter in the city or town in which he dwells.   The group includes several State senators, a representative, the chairman of the Republican State Committee, and a member of that committee.

The petitioners in the *Gibbs* case are the city of Newton, its mayor, city clerk, two of its registers of voters, and six other residents of and legal voters in Newton.

Reapportionment ("division") of the senatorial and councillor districts is required by art. 22 of the Amendments to the Constitution as amended by art. 71, adopted November 4, 1930.   Article 22 is to be read with art. 21, also as amended by art. 71.   These articles provide in part: (art. 21) "In the year nineteen hundred and thirty-five and every tenth year thereafter a census of the inhabitants of each city and town shall be taken and a special enumeration shall be made of the legal voters therein. . . . [This] shall also specify the number of legal voters residing in each precinct of each town containing twelve thousand or more inhabitants . . . and in each ward of each city.   Each special enumeration shall be the basis for determining the representative districts for the ten year period beginning with the first Wednesday in the fourth January following said special enumeration . . . ."   (art. 22)   "Each special enumeration of legal voters . . . shall likewise be the basis for determining the senatorial districts and also

the councillor districts for the ten year period beginning
with the first Wednesday in the fourth January following
such enumeration; provided, that such districts as estab-
lished in the year nineteen hundred and twenty-six shall
continue in effect until the first Wednesday in January in
the year nineteen hundred and thirty-nine.  The senate
shall consist of forty members.  The general court shall,
at its first regular session after the return of each special
enumeration, divide the commonwealth into forty districts
of contiguous territory, each district to contain, as nearly
as may be, an equal number of legal voters . . . provided,
however, that no town or ward of a city shall be divided
therefor; and such districts shall be formed, as nearly as
may be, without uniting two counties, or parts of two or
more counties, into one district.  The general court may
by law limit the time within which judicial proceedings may
be instituted calling in question such division. . . ."

1.   Mandamus is an appropriate remedy.  *Attorney Gen.*
v. *Suffolk County Apportionment Commrs.* 224 Mass. 598,
609–610.  *Attorney Gen.* v. *Secretary of the Common-
wealth,* 306 Mass. 25, 29.

Proper parties have instituted each petition.  In the
*Gibbs* case several petitioners are residents of and legal
voters in areas which are especially affected by St. 1960,
c. 432, in its use of a realignment of wards in Newton which
establishes boundaries different from those of the wards
underlying the existing apportionment of representative
districts.  *McGlue* v. *County Commrs. of Essex,* 225 Mass.
59, 61.  *Graham* v. *Special Commrs. of Suffolk County,* 306
Mass. 237, 241.  The issue in the *Lamson* case is such that
no petitioner need show a special position.  The contention
is that the Legislature was without power to make any new
division.  If the statute was unconstitutionally enacted, its
enforcement will impair the right of each citizen.  See
*McGlue* case, *supra,* p. 60.  Furthermore we think that the
petition is for the enforcement of a public duty so that the
people are at interest, and the principle stated in *Brewster*
v. *Sherman,* 195 Mass. 222, and *Brooks* v. *Secretary of the*

*Commonwealth,* 257 Mass. 91, 93, is applicable. *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25, 29. *Morrissey* v. *State Ballot Law Commn.* 312 Mass. 121, 132. *Kaplan* v. *Bowker,* 333 Mass. 455, 460–461. *Robinson* v. *Selectmen of Watertown,* 336 Mass. 537, 539. *Colegrove* v. *Green,* 328 U.S. 549, 552.

It is contended that the petitioners in the *Gibbs* case who are city officials have a standing because of their duties in respect of the conduct of elections. See *Police Commr. of Boston* v. *Boston,* 279 Mass. 577, 584. We need not pause to determine this, nor the right of the city itself. See *Wilmington* v. *Department of Pub. Util.* 340 Mass. 432, 438–439.

2. The chief issue before us is the power of the General Court to act in 1960. It is of first impression here, and there is little direct aid in our decisions or in legislative history. The redistricting enactments of the General Court following the special enumerations in 1935 and 1945 were, respectively, in 1939 and in 1947 and 1948. St. 1939, c. 467; c. 507. St. 1947, c. 182. St. 1948, c. 250. Although the Justices gave an opinion as to the validity of the 1939 action and the court passed on it, the issue of power to act at a session other than the "first regular session after the return" was not raised or discussed. *Opinion of the Justices,* 303 Mass. 615. *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25. *Graham* v. *Special Commrs. of Suffolk County,* 306 Mass. 237. We disagree with the respondent's contention that the silence of the court and the Justices and the two relatively recent instances of legislative action are significant. For examples of "long continued interpretation of a constitutional provision by the legislative department . . . [which] may be deemed to be the true construction of the Constitution," see *Fitzgerald* v. *Selectmen of Braintree,* 296 Mass. 362, 367; *Holmes* v. *Hunt,* 122 Mass. 505, 516; *Opinion of the Justices,* 126 Mass. 557, 600; *Answer of the Justices,* 214 Mass. 602, 606. See also *Opinion of the Justices,* 142 Mass. 601, 606.

We discover, however, that there are many decisions elsewhere under somewhat similar constitutional provisions

which sustain the view that the power continues beyond the session specified. Although not precedents, these decisions, discussed in later paragraphs, exemplify the principles at issue.

There are, we think, two mandates in arts. 21 and 22. They are, respectively, to reapportion and to do so at the "first regular session after the return." We do not accept the respondent's contention that the second mandate is only a directory provision. It states plainly a high and solemn obligation. *Opinion of the Justices,* 157 Mass. 595, 598 ("These Articles . . . require the apportionment to be made by the Legislature at its first session after the return"). *Opinion of the Justices,* 271 Mass. 582, 589. *Mt. Washington* v. *Cook,* 288 Mass. 67, 70. We must determine the implied intendment in respect of the first mandate in the event, uncontemplated by the framers, that the General Court does not act at the constitutionally specified time. We hold that the first mandate is basic; it is designed to assure the constitutional right of the people to equal apportionment, and the implication is that the duty and the power to act under it continue, pending a succeeding enumeration, until the power is exercised and discharged. *Botti* v. *McGovern,* 97 N. J. L. 353, 356. *Matter of Reynolds,* 202 N. Y. 430, 443–444. Accord, *Opinion of the Justices,* 254 Ala. 185; *Opinion of the Justices,* 12 Colo. 186; *People* v. *Carlock,* 198 Ill. 150, 154–155; *Fergus* v. *Kinney,* 333 Ill. 437, 442; *Denney* v. *State,* 144 Ind. 503, 516; *Opinion of the Justices,* 148 Maine, 404, 407–408; *W. R. Reynolds & Co.* v. *Secretary of State,* 238 Mich. 552, 554; *State* v. *Weatherill,* 125 Minn. 336, 338 (". . . at the first session after each enumeration . . . shall have the power . . ."); *State* v. *Becker,* 329 Mo. 1053, 1061; *Rumsey* v. *People,* 19 N. Y. 41, 55; *Jones* v. *Freeman,* 193 Okla. 554, 563–564; *Opinion of the Judges,* 61 S. D. 107, 110–112; *State* v. *Cunningham,* 81 Wis. 440, 517. See *Brewer* v. *Gray,* 86 So. 2d 799, 802 (Fla.) (Constitution expressly provides for action by following sessions). Compare *Noecker* v. *Woods,* 259 Pa. 160, 164, 165 ("The words, '. . . at the next succeeding session . . . and

not oftener . . .' indicate a clear intention . . . that . . . acts are to be passed at definitely designated sessions . . .''). In *Cahill* v. *Leopold,* 141 Conn. 1, 3–4 (note), 24, in the course of holding that only the specified session has the power (''after which said districts shall not be altered . . . except at a session . . . next after the completion of a census . . .'') the court distinguished the many authorities to the contrary saying: ''Our amendment is unique in two respects: first, it contains no language of command . . . but is, on the other hand, expressed in language of absolute prohibition; and secondly, the inclusion of the words 'if found necessary' emphasizes the absence of a duty.''

''The aim of all interpretation is to give effect to the dominating idea of the instrument. Statements in the Constitution and its Amendments must be given effect in consonance with the end they are designed to accomplish.'' *Mt. Washington* v. *Cook,* 288 Mass. 67, 70. The manifest object of art. 22 is reapportionment promptly after the enumeration. This object belies a construction which would permit a single session of the General Court by its inaction to end the right of the people to any reapportionment following a special enumeration. The Constitution does not contemplate that the Legislature, by failing to act when it should, can impose on the people for ten years an apportionment which changes in population have made unequal and hence constitutionally inappropriate.

Whatever the extent of the right of the people to call upon the judicial power in the event of failure of the Legislature to act (see this point, below) there appears no way in which the Legislature can be required to act at the first regular session following the return. No default in the obligation has occurred so long as the session continues. Mandamus of course does not lie against the Legislature. *Rice* v. *The Governor,* 207 Mass. 577. *Colegrove* v. *Green,* 328 U. S. 549, 555–556. *Brewer* v. *Gray,* 86 So. 2d 799 (Fla.). *Fergus* v. *Marks,* 321 Ill. 510, 514–518. 46 A. L. R. 964. 136 A. L. R. 677. 153 A. L. R. 522. Compare *Merrill* v. *County Commrs. of Essex,* 257 Mass. 184, 188 (com-

missioners ordered to act). The remedy established in this Commonwealth (see *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25, *supra*), and now sought, to enjoin action under the new statute, does not compel constitutional action by the General Court.

Judicial power in the Federal courts under the Federal Civil Rights Act to order an election at large or in the State courts to do this, or to take other extraordinary action in the event of continuing failure of a Legislature to reapportion, could not be a means of securing action at the session specified in the Constitution. See *Magraw* v. *Donovan,* 159 F. Supp. 901 (motion in 1958, to dismiss an action brought to invalidate the 1913 Minnesota Legislative Redistricting Act and for an election at large, denied pending possible action by incoming Legislature), *S. C.* 177 F. Supp. 803 (motion to dismiss allowed, the Legislature in 1959 in special session having reapportioned) ; *Asbury Park Press, Inc.* v. *Woolley,* 33 N. J. 1, 21–22 (reapportionment overdue since 1950 census; in view of the expectation that the incoming Legislature would do its constitutional duty, the court, after ruling that it had jurisdiction, withheld determination of the issues, with request for briefs, in the event that the Legislature did not act, on the issues of its authority to [1] allow the present allocation to stand but limit the value of assemblymen's votes by counties according to the 1960 census, [2] enjoin the election of the number of assemblymen in any county ''who palpably appear to constitute overrepresentation by reason of the 1960 census,'' or [3] ''order the inclusion on the ballot of such additional assemblymen as any county palpably appears entitled to'') ; *Brown* v. *Saunders,* 159 Va. 28 (mandamus to Secretary of the Commonwealth to hold congressional election at large). See also *Colegrove* v. *Green,* 328 U. S. 549, 566, 574, dissenting opinion; *Dyer* v. *Kazuhisa Abe,* 138 F. Supp. 220 (action by territorial voter against territorial Legislature, motion to dismiss denied), *S. C.* 256 F. 2d 728 (dismissed as moot, in view of Pub. L. No. 895, 84th Congress, 2d Sess., 48 U. S. C. [1958] § 562, which gave the redis-

tricting power to the Governor; District Court had orally announced it would order reapportionment or an election at large). For general discussions of the powers of the courts and the propriety of judicial action, see 56 Col. L. Rev. 949; 58 Col. L. Rev. 1080; 71 Harv. L. Rev. 1057, 1089; 42 Minn. L. Rev. 617; 32 N. Y. U. L. Rev. 383, 387.

In *Opinion of the Justices,* 237 Mass. 589, 591, in construing art. 48 of the Amendments, The Initiative, IV, § 2, which requires that proposals for amendment to the Constitution be laid before a joint session "not later than" a stated day, it was said: "Specifications in the Constitution respecting the time when or prior to which powers may be exercised, must be presumed to have been designed by the people to describe the only time at which such powers may be exercised." But in that provision the specification "not later than" explicitly excluded any later time. There is not in art. 22, nor in art. 21 in the similar provision for reapportioning representative districts, any such express exclusion of the implication otherwise present in the mandate to redistrict. A similar distinction was emphasized in *Cahill* v. *Leopold,* 141 Conn. 1, 10, 18, 24, *supra.* The absence of a prohibition was noted also in *Botti* v. *McGovern,* 97 N. J. L. 353, 356, and *Rumsey* v. *People,* 19 N. Y. 41, 55, both *supra.* South Dakota has ruled that the power and duty continue notwithstanding the words "but at no other time." *Opinion of the Judges,* 61 S. D. 107, 110–112, *supra.* . The Justices in *Opinion of the Justices,* 254 Mass. 617, 619, said: "The mode and time of apportionment are prescribed by the Constitution of the Commonwealth and it must be held that the people designed that it should be exercised at that time and by that mode only. In construing statute or constitutional provisions, the court looks to the history of the times when the constitution or law was made, and into the proceedings of those forming the organic law. . . . Nothing seems to have been left to implication." But the opinion given was that the referendum provision of art. 48 of the Amendments does not apply to redistricting. The Justices stressed that apportionment, particularly of

representative districts, has local aspects, and that art. 48, The Referendum, III, § 2, excludes, inter alia, any law "the operation of which is restricted to . . . particular districts or localities." Although the language quoted above is inclusive, it does not, in context, speak forcefully on the present issue.

The statement in *Opinion of the Justices*, 294 Mass. 610, 614, relied on by the petitioners ("When minute and clear directions are given in a constitution as to . . . a . . . duty, there is every reason to believe that it was designed to be performed in that way alone") was spoken in respect of explicit directions to place a description of legislation in a precise place on the ballot, and are inapplicable to the issue before us.

We recognize that each Legislature elected for a two year term is a unique body which goes out of existence under art. 10 of the Amendments on the next day preceding the first Wednesday in January at the end of its term (*Opinion of the Justices,* 291 Mass. 578, 586) so that there is a suggestion of an implication in arts. 21 and 22 that only "[t]*he* general court . . . [in office at the time of the returns has the power to] divide the commonwealth" into the requisite districts (emphasis supplied). But such implication is weakly grounded. The expression "[t]he general court" is, of course, also used to refer to the body in office from time to time.

We agree with the petitioners that the Constitution contemplates that each reapportionment will continue for ten years and that there will be a period of at least two years between the act of reapportionment and its effective date. See Report of the Joint Special Committee on Election Laws, 1928 House Doc. No. 28, pp. 36 et seq. The failure of the General Court to act thwarts the intention of the Constitution. But, as stated, even more serious nullification of constitutional purpose will result under a construction which would allow only the first regular session following the return to reapportion.

3.   The petitioners in both cases contend in effect that art. 21 and art. 22 contemplate reapportionment of representatives and of senatorial and councillor districts by the same session of the Legislature so that all will be effective at the same time.   In *Opinion of the Justices,* 157 Mass. 595, 599, it was said, ''We do not feel called upon to consider whether it may not be possible that an apportionment may be considered as complete for the purpose of electing senators, and yet remain incomplete for the purpose of electing representatives, because the condition of things which might occasion such an inquiry is not likely to arise. . . .   The enumeration and the apportionment are parts of one proceeding for distributing among the cities and towns of the Commonwealth in just proportion, every ten years, the senators and representatives to be elected during that period.''

The event thought unlikely at an earlier time having occurred, we must now determine the issue.   The express avoidance of an answer in *Opinion of the Justices,* 157 Mass. 595, excludes from the closing words of the paragraph set out above the implication which the petitioners find therein.   Plainly, reapportionment substantially at one time is the intent, and this intent has not been accomplished. It is in essence the same issue as that already discussed: Is there an implication that partial and delayed compliance is to be effective as far as it goes, or is it that the Constitution intends all or nothing?   We think it is the former.   The conclusion is supported by the considerations already stated and also by the inclusion of the provisions for reapportionment of senatorial and councillor districts in a separate article of the Constitution.

4.   Statute 1960, c. 432, does not violate arts. 8 and 9 of the Declaration of Rights.   We think the time between redistricting and election is sufficient so that there is no violation of the requirement of ''certain and regular elections'' (art. 8) or of the guaranty in art. 9 of ''an equal right to elect [public] officers, and to be elected.''

5.   The reapportionment is not invalid because of the in-

clusion of Westport in the "Cape and Plymouth" senatorial
district. The agreed facts include the statement that "the
seaward boundary of the town of Westport [in Bristol
County] is contiguous with the seaward boundaries of other
parts of said Cape and Plymouth district." Also included
are copies of the plans which located the marine boundaries
in tide waters of municipalities in Bristol and Dukes
counties as made by the Board of Harbor and Land Com-
missioners under St. 1881, c. 196. These plans show Bris-
tol County and County of Dukes County with a common
boundary in Buzzard's Bay and the towns of Gosnold in
County of Dukes County and Westport in Bristol County
with a common boundary in the division line of the counties.
This being a maritime Commonwealth, the word "terri-
tory" in the expression "contiguous territory" in art. 22
includes water spaces. See G. L. c. 1, § 3, which provides:
"The territorial limits of the commonwealth shall extend
one marine league from its seashore at extreme low water
mark . . .." The statutes expressly provide for the inclu-
sion of territorial waters within the limits of counties, cities
and towns.[1] It follows that the territory of Westport is
contiguous with the territory of Gosnold and of County of
Dukes County and there is no violation of the requirement
that each district be of "contiguous territory." Compare
*Sherrill* v. *O'Brien,* 188 N. Y. 185, 207–208; *Matter of Rey-
nolds,* 202 N. Y. 430, 443–444. It is not significant on this
issue that Westport and Fairhaven, the only two Bristol
County towns in the district, are not contiguous with each
other.

No issue is presented of the inclusion of only the towns of

---

[1] G. L. c. 34, § 1: "The seaward boundary of counties bordering on the
open sea shall coincide with the marine boundary of the commonwealth. The
boundary lines in tide water between adjacent coastal counties shall coincide
with and are hereby established to be the boundary lines in tide water be-
tween the adjoining coastal municipalities of said counties, as confirmed and
established by section one of chapter forty-two. . . ." G. L. c. 42, § 1: "The
seaward boundary of cities and towns bordering on the open sea shall coincide
with the marine boundary of the commonwealth. The boundary lines in tide
water between adjacent coastal municipalities, as located and defined by the
board of harbor and land commissioners . . . [under St. 1881, c. 196, with
exceptions not relevant] are hereby confirmed and established as the legal
boundary lines in tide water between said adjacent municipalities."

Fairhaven and Westport from Bristol County with towns in Plymouth County and all of Barnstable and Dukes and Nantucket counties, notwithstanding the constitutional requirement that the districts be formed "as nearly as may be, without uniting two counties, or parts of two or more counties, into one district." See *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25, 31–35.

6. The statute is not invalid because of the apportionment among districts of eight Newton wards. No ward has been divided in contravention of the explicit mandate. See *Attorney Gen.* v. *Secretary of the Commonwealth,* 306 Mass. 25, 31.

Prior to December 20, 1954, Newton was divided into seven wards. Ordinance No. 78 adopted on that date established eight wards. As the statutes then stood this action had only prospective effect in respect of State elections. Statute 1954, c. 532, duly accepted by the city under § 6 provided for Newton: (§ 1) "The territory of said city shall be divided into eight wards. . . ." (§ 4) "The board of aldermen shall . . . make a redivision of the territory of said city into wards in the manner provided in section one of chapter fifty-four . . . to which redivision . . . the provisions of sections one to five, inclusive, of said chapter fifty-four shall apply . . . ."

General Laws c. 54 provides in part: (§ 1) "In nineteen hundred and twenty-four, and every tenth year thereafter, in December, a city, by vote of its city council, may make a new division of its territory into such number of wards as may be fixed by law. . . ." (§ 4) "For all elections and primaries held in any city after it has been redivided into wards and prior to any antecedent primary of the first biennial state election at which representatives are to be elected from new representative districts established under the provisions of the constitution, the wards as existing previous to such redivision shall continue and for all such purposes the election officers shall be appointed and hold office and voting lists shall be prepared and all other things required by law shall be done as if there had been no such

redivision; provided, that the city council or a city may for the purposes of any municipal election and its antecedent primary or preliminary election, if any, held prior to said antecedent primary of the state election, order that the new wards shall be in effect . . .."

It is apparent that the Legislature in enacting G. L. c. 54, §§ 1 and 4, contemplated, as it should have in view of the intendment of arts. 21 and 22 of the Amendments to the Constitution (*supra,* point 2) that the apportionment of senatorial and councillor districts would be so made as to be effective at the same time as the reapportionment of representative districts. It was plainly also in contemplation, and required, that the special decennial enumeration be made in accordance with the wards as newly divided in the preceding December. Thus decennial reapportionment will reflect an appropriate readjustment of ward boundaries as well as changes in larger political subdivisions of the Commonwealth. In these circumstances the newly divided eight wards are the wards to be used for the apportionment of the new senatorial and councillor districts; they are the wards which, as art. 22 provides, may not be divided in the creation of new districts. Otherwise, upon the reapportionment of representatives, which action is overdue under the constitutional mandate, there would be seven wards in Newton for purposes of voting for senators and councillors and eight wards for other purposes and this unreasonable state of affairs would continue until the redistricting after the 1965 census.

The main thrust of the contention of the petitioners is, we think, toward the conclusion that all the redistricting must be so accomplished as to be first effective at the same election. The confusion possibly resulting until the Legislature performs its overdue obligation in respect of representative reapportionment does, as the petitioners contend, speak for a construction of the Constitution which would avoid this effect. *Opinion of the Justices,* 254 Mass. 617, 619. *Opinion of the Justices,* 10 Gray, 613, 615. For, with redistricting under art. 21 and art. 22 so done as to be first

effective at different elections, there will always be for a period a double set of wards in any city which has redrawn its ward lines for purposes of the new redistricting. Thus if the Legislature had first reapportioned the representatives but had delayed materially in acting under art. 22, then, under the express provisions of G. L. c. 54, § 4, the voting for representatives would have been on the new eight ward basis, while voting for senators and councillors would have continued on the seven ward basis. As stated earlier in this opinion, however, other more weighty considerations dictate the construction which permits reapportionment under art. 21 and art. 22 at different times.

We agree with the respondent that the effect of St. 1960, c. 432, in apportioning eight Newton wards was to supersede G. L. c. 54, § 4, so far as that section operated to bar such action.

*Opinion of the Justices,* 142 Mass. 601, 606, states the opinion that under art. 22 the division must be according to the boundaries of the towns and wards as they existed on the day of the census and special enumeration; the official returns showing the voters in each town and ward on that day as then constituted are the only basis for constitutional action. Our holding is consistent with that opinion. The eight Newton wards existed at the time of the special enumeration, the enumeration, in view of G. L. c. 54, § 4, had to be on the eight ward basis, and it was so made. 1956 House Doc. No. 2950, p. 9.

The Justices in the opinion at 142 Mass. 601, 606, spoke aptly to the contention of the petitioners in these words: "Nor do we overlook the fact, that a division according to the old wards in the city of Boston will . . . lead to the inconvenience that there will be one system of wards for the purposes of electing councillors, senators, and representatives, and a different system of wards for all other purposes. But this is an inconvenience which is not an incident of or created by the constitutional provision. It is the result of subsequent legislation and can be cured by legislation. An inconvenience thus created cannot be of weight

in determining the true construction of the constitutional provision." See also *Opinion of the Justices,* 6 Cush. 575, 577–578.

It does not appear that there is any insuperable difficulty in providing that voters who are in one ward for some purposes and another ward for other purposes will vote at one voting place. Special ballots[1] for use of voters who reside on streets which have a double ward assignment can be provided. In view, however, of the precision in the statutory statements of voting procedures, the adoption of an appropriate amending statute is plainly indicated. It appears advisable to avoid questions which may arise as to the validity of procedures adopted by the respondent and local election officials if they are obliged to act without the benefit of such a statute.

The highly undesirable result of two sets of wards will be overcome when the General Court acts under art. 21 to reapportion representatives. The Justices, led by Chief Justice Shaw in their opinion in 10 Gray, 613, 615, said, "Nothing can more deeply concern the freedom, stability, the harmony and success of a representative republican government, nothing more directly affect the political and civil rights of all its members and subjects, than the manner in which the popular branch of its legislative department is constituted."

7. In each case let the entry be

*Petition dismissed.*

---

[1] Or special voting machines if machines are used, but we are informed that is not the case in Newton.