LIMITS[1] & others[2] *vs.* PRESIDENT OF THE SENATE &
others.[3]

Suffolk. December 17, 1992. - December 23, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Amendment of the Constitution, Initiative petition,
General Court, Separation of powers. *Mandamus. Declaratory Relief.*

Neither relief in the nature of mandamus [34-35] nor a declaratory judg-
ment [35-36] was available as a remedy to the supporters of a proposed
initiative amendment to the Constitution of the Commonwealth, who
sought to require a joint session of the General Court to act on the
proposal before the end of the current legislative term.

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on December 10, 1992.

The case was reported by *Greaney*, J., on a statement of
agreed facts.

---

[1]The plaintiff LIMITS is a Massachusetts ballot question committee
formed to advocate limits on the number of consecutive terms that certain
elected officials may serve and to advocate approval of the proposed
initiative amendment to the Constitution of the Commonwealth that is the
subject of this action.

[2]The individual plaintiffs, each of whom is a registered voter and a
signer of the initiative petition that proposed the initiative amendment, are
Dorothea Thomas-Vitrac, Francis J. Faulkner, Judith L. Cypret, Mary L.
Burns, William M. Monnie, Michael R. Knapik, David J. Lionett, Gary
M. Coon, Bruce E. Tarr, and Robert D. Hawke. The latter five are
representatives in the General Court. The defendants do not question the
standing of at least the individual plaintiffs to maintain this action. See
*Citizens for a Competitive Mass.* v. *Secretary of the Commonwealth*, 413
Mass. 25, 28 n.6 (1992).

[3]William M. Bulger, President of the State Senate, is sued in his
constitutionally assigned capacity as presiding officer of the art. 48 joint
session of the Massachusetts Senate and House of Representatives for the
term of the 1991-1993 General Court. The joint session is also a
defendant.

The case was submitted on briefs.

*Michael R. Coppock* for the plaintiffs.

*Scott Harshbarger*, Attorney General, & *Peter Sacks*, Assistant Attorney General, for the defendants.

WILKINS, J. The plaintiffs are supporters of a proposed initiative amendment to the Constitution of the Commonwealth now pending before the joint session of the General Court which has been meeting from time to time pursuant to art. 48 of the Amendments to the Constitution of the Commonwealth. That initiative amendment, if lawfully adopted by the people, would limit the number of consecutive terms that may be served by the Governor, Lieutenant Governor, State Secretary, Treasurer and Receiver General, Auditor, Attorney General, Governor's Councillors, State Senators, State Representatives, United States Senators, and Representatives in Congress.[4]

In this action the plaintiffs seek an order in the nature of mandamus and a declaration that the joint session must take final action on the proposed initiative amendment. A single justice reserved and reported the case to this court on the complaint and a statement of agreed facts. The case was submitted to the court on briefs. We conclude that the plaintiffs are not entitled to relief in the nature of mandamus nor to a declaratory judgment. We, therefore, direct that judgment be entered in the county court dismissing the action.

Article 48 provides a process for the amendment of the Constitution, with exceptions not here relevant, by means of an initiative petition. Art. 48, The Initiative, IV, as amended by art. 81, § 1, of the Amendments. The steps required for

---

[4] In July of this year the Justices submitted an opinion to the Senate that the subject matter of the initiative petition was not one that art. 48 excludes from the initiative process and that the proposal contained only related matters as art. 48 requires. *Opinion of the Justices*, 413 Mass. 1201 (1992). The Justices respectfully declined to express any opinion on the constitutionality under the Constitution of the United States of limitations on the consecutive terms of United States Senators and Representatives in Congress. *Id.* at 1216-1217. The substantive content of the initiative amendment is set out more fully in the *Opinion of the Justices* than in this opinion. See *id.* at 1202-1203.

the presentation of the proposed initiative amendment to the joint session of the 1991-1993 General Court have been completed and need not concern us in this case. Since January 3, 1992, the proposed initiative amendment concerning term limitations for elected officials, which we shall call the initiative amendment (see art. 48, The Initiative, IV, § 1), has been on file with the Clerk of the House of Representatives. Article 48 requires that such a proposal be laid before a joint session of the Senate and House of Representatives for consideration no later than the second Wednesday in May. Art. 48, The Initiative, IV, § 2. The President of the Senate presides at the joint session. *Id.*

The joint session considered the initiative amendment on Wednesday, May 13, 1992, and voted to place it at the end of its calendar. The joint session has reconvened and recessed on numerous occasions since May 13, 1992, without taking final action on the initiative amendment. Several attempts to bring the initiative amendment forward for further consideration have failed because, under the governing rules, an objection to such action has been successfully raised. The joint session met on December 16 (after the record in this action was prepared), took no final action on the initiative amendment, and recessed until December 21. On December 21 the joint session adjourned without taking final action on the initiative amendment.

If a joint session fails to continue "from time to time until final action has been taken upon all amendments pending, the governor shall call such joint session or continuance thereof." Art. 48, The Initiative, IV, § 2. An affirmative vote "of not less than one-fourth of all the members elected" is required to refer an initiative amendment to the next General Court. Art. 48, The Initiative, IV, § 4. If an initiative amendment referred to the next General Court receives the affirmative votes of at least one-fourth of the members elected to serve in the next General Court, the proposal must be submitted to the people at the next State election. Art. 48, The Initiative, IV, § 5.

A joint session of the General Court held under art. 48, The Initiative, IV, § 2, should take "final action . . . upon all amendments pending" before it. The only remedy set forth in art. 48 for the failure of a joint session to act is a direction to the Governor to call a joint session or a continuance of a joint session if the joint session fails in its duty. Article 48 provides no judicial remedy.[5]

Article 48 does not require final action by any specified time. *Opinion of the Justices,* 291 Mass. 578, 586 (1935). The time within which the joint session must act on the initiative amendment continues until January 5, 1993, when the term of the current General Court will end. Art. 10 of the Amendments. See *Lamson v. Secretary of the Commonwealth,* 341 Mass. 264, 273 (1960). The joint session has not yet failed to comply with the direction of art. 48 that it take final action. See *Opinion of the Justices, supra* (final action "must be taken at some time"). Cf. *Lamson v. Secretary of the Commonwealth, supra* at 270 (reapportionment case) ("No default in the obligation has occurred so long as the [legislative] session continues"). The joint session has not failed to perform a duty that could justify issuing an order to act. In circumstances in which a person or entity has not yet failed to perform a duty, an action in the nature of mandamus is premature. *Boucher v. Salem Rebuilding Comm'n,* 225 Mass. 18, 20-21 (1916). For reasons we are about to set

---

[5]As to the Governor's obligations under art. 48 in connection with his power to prorogue the General Court (Part II, c. 2, § 1, art. 5 of the Massachusetts Constitution), the Justices stated the following in 1956:

"We think art. 48 was adopted in the expectation that all officers concerned would perform the duties required of them at the proper times. We do not believe it was intended that an unseemly controversy should be carried on between the Governor and the General Court to the limits of futility. We think therefore that the true and reasonable construction of the two parts of the Constitution taken together is that whenever the Governor has made a genuine effort to secure action by joint session and has become reasonably convinced that it will be impossible to secure it, he may exercise his powers of prorogation, even though final action on all proposed amendments has not been taken."

*Opinion of the Justices,* 334 Mass. 745, 758-759 (1956).

forth, we need not consider whether the decision of the joint session to adjourn without taking final action on the initiative amendment might lead us to conclude that, as a practical matter, this action is no longer premature.

There are more fundamental problems with .the plaintiffs' requests for relief. The courts should be most hesitant in instructing the General Court when and how to perform its constitutional duties. Mandamus is not available against the Legislature. *Lamson* v. *Secretary of the Commonwealth, supra.* Cf. *Rice* v. *The Governor,* 207 Mass. 577, 578-580 (1911) (mandamus does not lie against the Governor). The reason for this rule rests on separation of powers principles expressed in art. 30 of the Declaration of Rights of the Massachusetts Constitution. Those principles call for the judiciary to refrain from intruding into the power and function of another branch of government, in this case, the joint session of the Legislature held under art. 48. See *Babets* v. *Secretary of Human Servs.,* 403 Mass. 230, 233 (1988). It follows that a judicial remedy is not available whenever a joint session fails to perform a duty that the Constitution assigns to it. Restraint is particularly appropriate here where art. 48 gives the Governor a role in seeing that a joint session carries out its constitutional obligations, but gives to the courts no enforcement role. When the purpose of art. 48 has been frustrated, the only remedy may come from the influence of public opinion, expressed ultimately at the ballot box.[6]

Just as a judicial order directing the joint session to act is not appropriate, declaratory relief is not available to the plaintiffs as a remedy. Section 2 of the Declaratory Judgment Act (G. L. c. 231A [1990 ed.]) states generally that the declaratory judgment procedure of § 1 of the act may be

---

[6]In the course of the debates in the 1917-1918 Constitutional Convention that led to the adoption of the initiative and referendum provisions of the State Constitution, Mr. Quincy of Boston commented, in response to a question, that he did "not believe we need to consider seriously . . . a defiance of the provisions of the amendment by either of these two branches of the General Court." 2 Debates in the Constitutional Convention 1917-1918, at 685 (1918).

used to obtain a determination concerning the constitutionality of official practices. Section 2, however, expressly removes the legislative department from its application.[7] The General Court sitting in joint session under art. 48 is the legislative department within the meaning of G. L. c. 231A, § 2. See *Opinion of the Justices*, 291 Mass. 578, 582-583 (1935). Even if it were not, in our discretion we would decline, for reasons already given, to grant relief under G. L. c. 231A.

Judgment shall be entered in the county court dismissing the complaint.

*So ordered.*

---

[7]Section 2 states in crucial part: "provided, however, that this section shall not apply to the governor and council or the legislative and judicial departments." G. L. c. 231A, § 2.