424                                           425 Mass. 424 (1997)

League of Women Voters of Massachusetts *v.* Secretary of the Commonwealth.

LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS & others[1] *vs.*
SECRETARY OF THE COMMONWEALTH.

Suffolk. May 6, 1997. - July 11, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, & FRIED, JJ.

*Elections,* Term limitation. *Constitutional Law,* Elections, Initiative petition. *Initiative. General Court.*

This court concluded that St. 1994, c. 230, which the people approved as an initiative petition at the November 8, 1994, election under art. 48 of the Amendments to the Constitution of the Commonwealth, in its effect concerns and prescribes qualifications for elective office and is not simply a measure regulating elections. [427-429]

Where art. 48 of the Amendments to the Constitution of the Commonwealth restricts the people from enacting, by statutory initiative, qualifications for those public offices for which the Legislature itself may not enact qualifications, St. 1994, c. 230, a so-called term limits statute approved by the people as an initiative petition under art. 48, is unconstitutional insofar as it prescribes qualifications for elective office in addition to those qualifications that appear in the Constitution. [430-432]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 8, 1995.

The case was reported by *Abrams,* J.

*Gerald A. McDonough (Verne W. Vance, Jr.,* with him) for the League of Women Voters of Massachusetts & others.

*Morris M. Goldings* for Daniel E. Bosley.

*Thomas A. Barnico,* Assistant Attorney General (*Benjamin G. Robbins,* Assistant Attorney General, with him) for the Secretary of the Commonwealth.

The following submitted briefs for amici curiae:

*E. Randolph Tucker, Robert F. Schwartz & Andres W. Lopez,* for the Democratic State Committee.

[1] Joan Flood Ashwell, Daniel E. Bosley, Anthony Catalano, Carol C. Cleven, John Lipa, Elizabeth Marshall, Byron Rushing, Norma Shapiro, and Deena Whitfield, all of whom are registered voters. Bosley and Cleven are State representatives elected first in 1986. Rushing is a State representative elected first in 1982.

*Robert G. Millar*, pro se.

*John T. Montgomery, John H. Mason & Harold Hestnes* for the Massachusetts Business Roundtable.

*Christopher A. Kenney & Edward J. Goddard* for the U.S. Term Limits & another.

WILKINS, C.J. Before us is a reservation and report, on the pleadings and a statement of agreed facts, of a challenge to the constitutionality of chapter 230 of the Acts of 1994 (chapter 230), which the people approved as an initiative petition at the November 8, 1994, election under art. 48 of the Amendments to the Constitution of the Commonwealth.[2] Chapter 230 purports (a) to limit the number of consecutive terms for which a public officer may be listed on primary and general election ballots to serve in the same public office and (b) to eliminate the pay, perquisites, and privileges of certain public officers if reelected after serving a number of consecutive terms specified in chapter 230. The plaintiffs contend that a statute adopted by the people pursuant to the initiative process may not legislate qualifications for those public officers in addition to those qualifications that appear in the Constitution.

Chapter 230 has commonly been called a term limits statute. The information for voters, published by the then Secretary of the Commonwealth, concerning 1994 ballot questions described the proposed law, which became chapter 230, under the heading of "Term Limits." The legislative committee's minority report and the argument in favor of the proposal accompanying the voter information characterized the proposal as a term limits measure. Indeed, the statement of agreed facts refers to chapter 230 as a term limits statute. We eschew the characterization, for the moment, because one issue before us is whether chapter 230 establishes limits that are in effect statements of qualifications for office (i.e., is in fact a term limits statute) or whether chapter 230 merely regulates elections. To call chapter 230 a term limits statute, before we decide that issue, would suggest that we have prejudged that question.

We shall summarize portions of chapter 230 that are significant for this case. Section 1 of chapter 230 inserted a new paragraph in G. L. c. 53, § 48, as appearing in the 1992 official edition of the General Laws. Important portions of that paragraph, which is

---

[2]The vote on the measure was 46.95% for, 44.11% against, and 8.95% not voting.

set forth in full in the margin,[3] were accurately described by the Attorney General in his summary submitted to the voters in 1994 as follows:

"This proposed law would prevent the name of a person from being printed on a state primary or general election ballot as a candidate for one of a number of specified state and federal public offices, if the person had already served a certain number of consecutive terms in that office within a fixed period preceding the end of the then-current term of office. If such a person were still elected by write-in vote to one of the state offices (except the office of Governor), the person would serve without a salary, and in some of the state offices, without payment for certain expenses.

"Under the proposed law, the name of a person could not be printed on a primary or general election ballot as a candidate for the office of Governor, Lieutenant Governor,

---

[3]The paragraph added to G. L. c. 53, § 48, reads as follows: "There shall not be printed on the ballot at the state primary or state election the name of any person as a candidate for nomination or election for any office to be filled by all the voters of the commonwealth, or for representative in congress, governor's councillor, senator in the general court or representative in the general court, if said person: (*a*) is a candidate for the office of Governor, Lieutenant Governor, Secretary, Treasurer, Auditor or Attorney General who, by the end of the then current term of office will have served, or but for resignation would have served, for two consecutive terms in that office within the eleven year period immediately preceding the end of the then current term of office; (*b*) is a candidate for the office of governor's councillor, senator in the general court, representative in the general court, or representative in congress from Massachusetts who, by the end of the then current term of office will have served, or but for resignation would have served, four consecutive terms in that office within the nine year period immediately preceding the end of the then current term of office; or (*c*) is a candidate for the office of United States Senator from Massachusetts who, by the end of the then current term of office will have served, or but for resignation would have served, two consecutive terms in that office within the seventeen year period immediately preceding the end of the then current term of office. For the purpose of this section, (i) any person elected or appointed to the office of governor, lieutenant governor, secretary, treasurer, auditor, attorney general, representative in the general court, senator in the general court, representative in congress or United States Senator from Massachusetts who serves more than one-half of a term in that office, shall be deemed to have served an entire term in that office, and (ii) any person serving in one of the foregoing offices as of January 15, 1995 shall be deemed to be serving his first term in that office."

Secretary of State, State Treasurer, State Auditor, or State Attorney General, if the person had served two consecutive terms (eight years) in that office in the eleven years prior to the end of the then-current term of office. The name of a person could not be printed on a primary or general election ballot as a candidate for the office of Governor's Councillor, State Representative, State Senator, or United States Representative from Massachusetts, if the person had served four consecutive terms (eight years) in that office in the nine years prior to the end of the then-current term of office. The name of a person could not be printed on a primary or general election ballot as a candidate for the office of United States Senator from Massachusetts, if the person had served two consecutive terms (twelve years) in that office in the seventeen years prior to the end of the then-current term of office. The proposed law would not prevent any voter from casting a write-in vote for any person as a candidate for any office."

We are not concerned in this case with the offices of United States Senator and United States Representative.[4]

The Attorney General's summary also described the limitations on compensation and benefits that chapter 230 would impose on any person elected in spite of his or her ineligibility to have his or her name printed on the ballot. He stated, "If a person made ineligible by the proposed law to have his or her name printed on the ballot as a candidate for the office of Lieutenant Governor, Secretary of State, State Treasurer, State Auditor, State Attorney General, Governor's Councillor, State Representative or State Senator were still elected to that office by write-in vote, the person would serve without a salary. If such a person were elected to the office of Lieutenant Governor, Governor's Councillor, State Representative or State Senator, the person would also serve without payment for certain expenses."

A person may be elected to a public office established by the Constitution of the Commonwealth only if he or she has the qualifications that the inhabitants of the Commonwealth have

---

[4]The opinion of the United States Supreme Court in *U.S. Term Limits, Inc.* v. *Thornton*, 514 U.S. 779 (1995), appears effectively to have invalidated chapter 230 insofar as it applies to persons elected to those offices. That opinion does not discuss or apply to limitations concerning candidates for State offices.

established "by their frame of government." Art. 9 of the Massachusetts Declaration of Rights.[5] The frame of government is Part II of our Constitution. See *McDuffy* v. *Secretary of the Executive Office of Educ.*, 415 Mass. 545, 564 (1993). Part II sets forth qualifications for Governor (Part II, c. 2, § 1, art. 2, as amended by arts. 7 and 34, of the Amendments to the Massachusetts Constitution), Lieutenant Governor (Part II, c. 2, § 2, art. 1, as amended by arts. 7 and 34), Councillor (Part II, c. 2, § 3, as amended by arts. 16 and 25, of the Amendments), other constitutional officers (Part II, c. 2, § 4, as amended by arts. 17, 64, and 82, of the Amendments), and members of the House of Representatives (Part II, c. 1, § 3, art. 3, as amended by arts. 13; 21; 71; 92; 101, § 1; and 109, of the Amendments) and of the Senate (Part II, c. 1, § 2, art. 5, as amended by arts. 13; 22; 71; 92; 101, § 2; and 109, of the Amendments.[6]

It is well settled that the Legislature may not change qualifications for public office that are prescribed by the Constitution. See *Opinion of the Justices*, 240 Mass. 611, 614 (1922); *Opinion of the Justices*, 165 Mass. 599, 601 (1896); *Kinneen* v. *Wells*, 144 Mass. 497, 499 (1887) (voter qualification). Cf. Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution; *Wood* v. *Election Comm'rs of Cambridge*, 269 Mass. 67, 70 (1929); *Opinion of the Justices*, 240 Mass. 611, 613 (1922) (Legislature may fix reasonable qualifications for office of district attorney).[7] The Secretary argues that (1) the act does not establish or change any qualifi-

---

[5]Article 9 of the Massachusetts Declaration of Rights states: "All elections ought to be free; and all the inhabitants of this Commonwealth, having such qualifications as they shall establish by their frame of government, have an equal right to elect officers, and to be elected, for public employments."

[6]Other qualifications or limitations in the Constitution include prohibiting the Governor and Lieutenant Governor from holding any other State office (Part II, c. 6, art. 2); prohibiting the Secretary, Attorney General, and Treasurer from also sitting in the Legislature (*id.*); prohibiting a person from sitting in the Legislature if convicted of bribery or corruption in obtaining election or appointment (*id.*); prohibiting certain officers from sitting as a State judge or from serving as a member of Congress (art. 8 of the Amendments); and requiring each person holding any office under the Constitution to be able to read the Constitution in the English language and to write his or her name (art. 20 of the Amendments).

[7]This principle is generally accepted throughout the country. See, e.g., *Reale* v. *Real Estate Appraisers*, 880 P.2d 1205, 1206-1207 (Colo. 1994); *Pavlak* v. *Grove*, 284 N.W.2d 174, 180 (Minn. 1979); *Imbrie* v. *Marsh*, 3 N.J. 578, 585 (1950). Cf. *Powell* v. *McCormack*, 395 U.S. 486 (1969).

425 Mass. 424 (1997)     429

League of Women Voters of Massachusetts v. Secretary of the Commonwealth.

cation for office because it simply regulates elections and (2) the people, in any event, have the authority to approve qualifications for public offices by acting pursuant to the statutory initiative provisions of art. 48 of the Amendments to the Constitution. We consider each of these arguments in turn and reject them.

The limitations on the right of certain incumbents to have their names printed as candidates for reelection will discourage them, in all reasonable likelihood, from seeking reelection and, if they try, cause their defeat. The difficulties confronting a candidate who seeks election as a "sticker" or "write-in" candidate when other candidates' names are printed on the ballot are substantial. The time, effort, and expense of such a candidacy make the task monumental. The denial of compensation to such a write-in candidate (except a candidate for Governor), if he or she were successful in his or her candidacy, heavily discourages such an official from seeking to run for reelection. Additionally discouraged would be those officeholders (Lieutenant Governor, Governor's Councillor, State Representative, and State Senator) who would also be denied payment for travel and expenses.

The Supreme Court discussed ballot access restrictions in the Arkansas Constitution in its opinion in *U.S. Term Limits, Inc.* v. *Thornton,* 514 U.S. 779 (1995). An amendment to the Arkansas Constitution provided that certain United States Senators and Representatives would not have their names printed on the ballot but that they could run as write-in candidates. *Id.* at 828. The proponents of the constitutional provision argued that such a provision would not add qualifications for office (which the Court held the United States Constitution forbade [*id.* at 825-826]) but rather would permissibly regulate elections. The Court saw the Arkansas constitutional provision as "an indirect attempt to accomplish what the Constitution prohibits Arkansas from accomplishing directly." *Id.* at 829. The Court agreed with the plurality opinion in the Arkansas Supreme Court that characterized the constitutional provision as "an 'effort to dress eligibility to stand for Congress in ballot access clothing.' " *Id.,* quoting *U.S. Term Limits, Inc.* v. *Hill,* 316 Ark. 251, 266 (1994). "In our view, an amendment with the avowed purpose and obvious effect of evading the requirements of the Qualifications Clauses by handicapping a class of candidates cannot stand." *Id.* at 831. Chapter 230 in its effect concerns and prescribes qualifications for elective office and is not simply a ballot access measure.

The question remains whether the Constitution of the Commonwealth authorizes use of the statutory initiative process to adopt the qualifications for those offices that are listed in the challenged portions of chapter 230. The Secretary contends that the initiative process set forth in art. 48 permits the people to add qualifications for office beyond those that appear in the Constitution. This is, of course, an issue that was not involved in the *U.S. Term Limits, Inc.* case.

The Secretary acknowledges correctly that the Legislature has no authority to alter the qualifications for office that are prescribed by the Constitution. He argues that the people may nevertheless use the statutory initiative process of art. 48 to add qualifications for public offices for which the Constitution prescribes qualifications. This argument immediately runs into art. 48, The Initiative, II, § 2, which states that "the limitations on the legislative power of the general court in the constitution shall extend to the legislative power of the people as exercised hereunder." Article 48, therefore, restricts the people from enacting, by statutory initiative, qualifications for those public offices for which the Legislature itself may not enact qualifications. The idea that constitutionally prescribed qualifications may be changed only by constitutional amendment is intuitively sound. Article 48 was a constitutional amendment, but art. 48 disclaims any extension to the people of a right to legislate beyond the right of the Legislature.

The Secretary argues that arts. 8 and 9 of the Declaration of Rights grant the people the right to enact laws, such as chapter 230, and that art. 48 provided the vehicle to exercise that right, a right that had lain dormant from 1780 to 1918 when the people adopted art. 48.[8] When adding art. 48, the people could have granted themselves statutory authority by the initiative process to prescribe qualifications for office beyond those stated in the Constitution, but art. 48 did not do so.[9] Thus, although the people

---

[8]Article 8 of the Massachusetts Declaration of Rights states: "In order to prevent those, who are vested with authority, from becoming oppressors, the people have a right, at such periods and in such manner as they shall establish by their frame of government, to cause their public officers to return to private life; and to fill up vacant places by certain and regular elections and appointments." See note 5, *supra*, for the text of art. 9.

[9]The language limiting the legislative power of the people was proposed by Joseph Walker, the floor leader of the initiative and referendum amendment at the 1917-1918 constitutional convention. See *Opinion of the Justices*, 413 Mass.

could by a constitutionally authorized statutory initiative measure define (that is, "establish by their frame of government" [arts. 8 and 9]) new qualifications for office, art. 48 disavows any intention to permit a statutory initiative on the subject.

The proponents of term limits, a characterization we may now properly give to chapter 230, have cause for discouragement. It appears from our conclusion in this action that they cannot achieve their goal through a statutory initiative. Efforts to obtain term limits by a constitutional amendment foundered in 1992 because of the refusal of the Legislature in joint session to take final action on such a proposal as the Constitution of the Commonwealth directed. See art. 48, The Initiative, IV, § 2, as amended by art. 81, § 1, of the Amendments; *LIMITS* v. *President of the Senate*, 414 Mass. 31, 33-34 (1992). We concluded in *LIMITS* v. *President of the Senate, supra*, that this court should not direct the Legislature to exercise its mandated function. We did so based on principles of separation of powers. *Id.* at 35. We noted also that art. 48 "gives the Governor a role in seeing that a joint session carries out its constitutional obligations, but gives to the courts no enforcement role." *Id.* Contrast *Citizens for a Competitive Mass.* v. *Secretary of the Commonwealth*, 413 Mass. 25, 30-31 (1992) (failure of legislative committee to report on proposed statutory initiative does not bar placing matter on ballot when Legislature takes no action).

Article 48's provisions concerning an initiative proposal for a statutory change and an initiative proposal for constitutional change differ significantly with respect to legislative inaction. See *Cohen* v. *Attorney Gen.*, 357 Mass. 564, 578 (1970). Upon the Legislature's failure to enact a proposed statutory change (assuming sufficient additional signatures are obtained), "the secretary of the commonwealth shall submit such proposed law to the people at the next state election." Art. 48, The Initiative, V, § 1, as amended by art. 81, § 2, of the Amendments. On the other hand, if a joint session held under art. 48, The Initiative, IV, § 2, fails to act on a proposed constitutional amendment, the only remedy set forth in art. 48 "is a direction to the Governor to call a joint session or a continuance of a joint session if the joint

_____

1201, 1205-1206 (1992). When he offered the amendment to limit the scope of the general proposal, Walker said that the amendment "simply applies the limitations now on the legislative power of the General Court to the legislative power of the people as exercised under this measure." 2 Debates in the Constitutional Convention 1917-1918, 649 (1918).

session fails in its duty." *LIMITS* v. *President of the Senate, supra* at 34. The distinction that the 1917-1918 Constitutional Convention made was intentional. *Id.* at 35 n.6.

We suggested in *LIMITS* v. *President of the Senate, supra* at 35, that, when the Legislature fails to act in joint session on a proposed initiative to amend the Constitution, and thus frustrates the purpose of art. 48, "the only remedy may come from the influence of public opinion, expressed ultimately at the ballot box." This statement may have had a Delphic quality. The suggestion was not to propose use of the statutory initiative approach but rather to point to the power of the people to elect a sufficient number of legislators who would not defy the requirements of the Constitution so that a joint session would be required to perform its duty.

A judgment shall be entered in the county court declaring St. 1994, c. 230, unconstitutional insofar as it seeks to limit access to primary and general election ballots to certain State officers identified in chapter 230 and seeks to eliminate the payment of compensation and benefits to certain of those State officers if they should be reelected in an election in which their names are not printed on the official ballot.

*So ordered.*