OPINION OF THE JUSTICES TO THE GOVERNOR
AND COUNCIL.

*General Court. Constitutional Law*, Initiative, General Court. *Parliamentary Procedure. Governor.*

Dissolution of a joint session of the two branches of a General Court held according to art. 48 of the Amendments to the Constitution, The Initiative, IV, at which a proposal for legislative amendment to the Constitution agreed to by the next preceding General Court was again agreed to but a motion to reconsider such agreement was made, without agreement as to the time for a subsequent joint session at which by special rule that motion should be considered, did not terminate that motion, and the previous action of the joint session in agreeing for the second time to the proposal did not constitute such final legislative action as to require certification thereof to the Secretary of the Commonwealth and submission of the proposal to the people at the next State election. [750, 753]

Adjournment of successive joint sessions of the General Court without taking action on a pending motion to reconsider action of a preceding joint session agreeing to a proposal for legislative amendment to the Constitution and without agreement as to a time for a subsequent joint session, did not, in view of the controlling special rules of joint sessions, terminate the pending motion to reconsider and it could be acted on at a later joint session. [753–756]

Under art. 48 of the Amendments to the Constitution, The Initiative, IV, there is no specified time within which a joint session of the General Court or a continuance of a joint session must take final action on a proposal for legislative amendment to the Constitution seasonably laid before a joint session; nor is there anything to prevent a joint session from taking favorable action for the second time on such a proposal too late to permit the proposal to be placed on the ballot for a State election in the same year. [751, 756–757]

Under art. 48 of the Amendments to the Constitution, The Initiative, IV, where a proposal for a legislative amendment to the Constitution has been seasonably laid before a joint session of the General Court and the proposal has not been acted upon or agreement made as to the time for a subsequent joint session to consider it, there is no specific time within which the Governor is required to call a joint session for that purpose provided he does so at some reasonable time during the life of that General Court. [757, 758]

If a proposal for a legislative amendment to the Constitution under art. 48 of the Amendments to the Constitution, The Initiative, IV, as amended, is introduced in the General Court by a member and consideration

thereof is called for by vote of either branch but it is not seasonably laid before any joint session or agreement made as to the time for holding a joint session, the Governor must call a joint session in time so that the proposal may be laid before it not later than the second Wednesday in May of the year in which the proposal was introduced. [757]

Under art. 48 of the Amendments to the Constitution, The Initiative, IV, a proposal for legislative amendment to the Constitution may be introduced in the second annual session of a General Court. [752, 758]

If a proposal for legislative amendment to the Constitution has been introduced into a General Court by a member after the second Wednesday in May of the year of its second annual session and consideration thereof is then called for by vote of one of the branches, the Governor is precluded by art. 48 of the Amendments to the Constitution, The Initiative, IV, § 2, as amended by art. 81, § 1, from calling a joint session to consider the proposal. [752, 758]

Under c. 2, § 1, art. 5, of the Constitution and art. 48 of the Amendments, The Initiative, IV, § 2, as amended by art. 81, § 1, the Governor, whenever he has made a genuine effort to secure final action by joint session of the General Court on a proposal for legislative amendment to the Constitution seasonably laid before a joint session and has become reasonably convinced that it will be impossible to secure such action, may exercise his power of prorogation without such action having been taken. [752–753, 758–759]

On June 28, 1956, the Justices submitted the following answers to questions propounded to them by the Governor and Council.

To His Excellency the Governor and The Honorable Council of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions contained in your order adopted June 7, 1956, and transmitted to us on that day.

The questions relate to the status of a proposed legislative amendment to the Constitution providing for four year terms for the Governor, Lieutenant Governor, Secretary, Treasurer and Receiver General, Attorney General, and Auditor which was laid before a joint session in 1954, and to certain other proposed legislative amendments laid before a joint session in 1955, and to still others laid before such a joint session in 1956. The answers turn primarily upon the construction of art. 48 of the Amendments to the

Constitution, The Initiative, IV, § 2, as now appearing in amended form in art. 81, § 1, of the Amendments, and of art. 48, The Initiative, IV, §§ 4 and 5. These sections, in so far as it is necessary to state them here, read as follows:

"Section 2. Joint Session. — . . . if in case of a proposal for amendment introduced into the general court by a member of either house, consideration thereof in joint session is called for by vote of either house, such proposal shall, not later than the second Wednesday in May, be laid before a joint session of the two houses, at which the president of the senate shall preside; and if the two houses fail to agree upon a time for holding any joint session hereby required, or fail to continue the same from time to time until final action has been taken upon all amendments pending, the governor shall call such joint session or continuance thereof."

"Section 4. Legislative Action. — Final legislative action in the joint session upon any amendment shall be taken only by call of the yeas and nays, which shall be entered upon the journals of the two houses; and an unfavorable vote at any stage preceding final action shall be verified by call of the yeas and nays, to be entered in like manner. At such joint session a legislative amendment receiving the affirmative votes of a majority of all the members elected, or an initiative amendment receiving the affirmative votes of not less than one-fourth of all the members elected, shall be referred to the next general court."

"Section 5. Submission to the People. — If in the next general court a legislative amendment shall again be agreed to in joint session by a majority of all the members elected . . . such fact shall be certified by the clerk of such joint session to the secretary of the commonwealth, who shall submit the amendment to the people at the next state election. . . ."

The pertinent facts as disclosed in the order of the Governor and Council are in substance these: At a joint session of the two houses held on May 12, 1954, the 1954 amendment "was read twice and ordered to a third reading at a subsequent Joint Session in accordance with pro-

visions of the special rules adopted for Joint Sessions, whereupon the purpose for which the Joint Session had assembled having been accomplished the President declared it to be dissolved." Pursuant to orders severally adopted by the two houses a second joint session was held on May 20, 1954, at which the 1954 amendment was read for a third time and, on call of the yeas and nays, was agreed to by a majority of all the members elected and was "referred to the next General Court" in accordance with § 4 quoted above. All this, it will be observed, occurred in the second year of the biennium for which the senators and representatives had been elected.

In the following year, 1955, the next General Court for 1955–1956 failed to agree upon a time for holding any joint session to consider the 1954 amendment and two new proposals for legislative amendments, called in the order the 1955 amendments, and the Governor called a joint session for May 11, 1955, the second Wednesday of the month, to consider all three proposals. The two houses met in joint session on that day and, without taking action on any of the amendments, adjourned to meet again at a subsequent joint session "to be agreed upon." Pursuant to orders severally adopted by the two houses a second joint session of the 1955–1956 General Court was held on May 16, 1955, to further consider the 1954 and 1955 amendments. The 1954 amendment was again agreed to by a majority of all the members, "whereupon" a motion was made to reconsider the vote, and the president stated that this motion would be subject to Rule 70 of the House under which rule it would be considered at a subsequent joint session to be agreed upon. At the joint session of May 16, 1955, the 1955 amendments were ordered to a third reading, subject in each case to reconsideration under Rule 70 and to be considered at a subsequent joint session to be agreed upon. The president then declared the joint session dissolved. Pursuant to orders severally adopted by the two houses a third joint session of the 1955–1956 General Court was held on May 23, 1955, for the purpose of further considering the

1954 and 1955 amendments. This third joint session adjourned without action on the motion to reconsider the agreement to the 1954 amendment and without action on the remaining matters assigned for consideration. Both houses having failed to agree on a time for holding a joint session to continue consideration of the matters pending at the adjournment of the previous joint session of May 23, 1955, the Governor, on May 8, 1956, called a joint session to be held on May 9, 1956, being the second Wednesday of the month for the purpose of continuing consideration of the 1954 and 1955 amendments. Pursuant to the call of the Governor, the two houses met in joint session on May 9, 1956, for the purpose of further considering the 1954 and 1955 amendments and adjourned without action on the motion to reconsider agreement to the 1954 amendment and without action on the remaining matters assigned for consideration. Both houses "having failed to take final action" on the 1954 and 1955 amendments, and having failed to agree on a time for holding any joint session to consider certain other new proposals for legislative amendments, the Governor on May 9, 1956, called a joint session to be held on May 14, 1956, for the purpose of continuing consideration of the 1954 and the 1955 amendments and for the purpose of considering new proposals for legislative amendments. Pursuant to this call the houses met in joint session on May 14, 1956, and voted to reconsider the vote of May 16, 1955, by which they had agreed for the second time to the 1954 amendment and thereafter, on reconsideration, voting by the yeas and nays, failed to agree to the recurring question of agreeing to the 1954 amendment, and took action of one kind or another upon the other matters, some of the votes being subject to reconsideration under Rule 70 at a subsequent joint session to be agreed upon.

Rule 70 of the House of Representatives relative to reconsideration is adopted as one of the special rules with reference to the consideration in joint session of proposals for legislative amendments to the Constitution, and, so far as now material, reads as follows: "No motion to recon-

sider a vote shall be entertained unless it is made on the
same day on which the vote was passed, or before the Orders
of the Day have been taken up on the next day thereafter
on which a quorum is present. If reconsideration is moved
on the same day, the motion shall (except during the last
week of the session) be placed first in the Orders of the Day
for the succeeding day; but, if it is moved on the succeed-
ing day, the motion shall be considered forthwith; . . . ."

The questions are as follows:

"1. Did the dissolution of the Joint Session of the Gen-
eral Court held on May 16, 1955 without agreement as to
the time for a subsequent joint session terminate the pend-
ing motion for reconsideration under Rule 70 of the
House of Representatives with the result that the previ-
ous action of said Joint Session in agreeing to the 1954
amendment constituted such final action on the 1954
amendment under Article XLVIII of the Amendments
to the Constitution as would require that the fact of such
agreement be certified by the clerk of the Joint Session
to the Secretary of the Commonwealth for submission of
the 1954 amendment to the people at the next election?
"2. If the answer to the previous question is in the nega-
tive, did the adjournment of either or both of the two sub-
sequent Joint Sessions of the General Court held on
May 23, 1955 and May 9, 1956, without taking action
on the motion to reconsider the action taken by the
Joint Session on May 16, 1955 in agreeing to the 1954
amendment and without agreement as to a time for a
subsequent joint session, terminate said motion to recon-
sider with the result that the action of the Joint Session
held on May 16, 1955 in agreeing to the 1954 amendment
constituted final action thereon under Article XLVIII of
the Amendments to the Constitution?
"3. Under Article XLVIII of the Constitution must final
action on proposals for amendment to the Constitution,
which have been laid before a Joint Session of the General
Court, be taken by said Joint Session or a continuance

thereof not later than the second Wednesday in May of the second annual session of such General Court?

"4. If the answer to question 3 is in the negative, must a Joint Session of a General Court succeeding that which first agreed to a proposal for amendment to the Constitution take final action on such proposal in time to allow the Secretary of the Commonwealth to distribute to the registered voters the information required by Article XLVIII of the Amendments and to place the proposal on the ballot for the state election occurring during the year of the second annual session of such successor General Court?

"5. If the two branches of the General Court fail to agree on a time for holding a Joint Session to consider a proposal for amendment to the Constitution which was introduced in the first annual session of a General Court and consideration of which has been called for by vote of either House must the Governor under Article XLVIII of the Amendments call such Joint Session:

(a) Not later than the second Wednesday in May of the year of the first annual session of such General Court; or

(b) Not later than the second Wednesday in May of the year of the second annual session of such General Court?

"6. If the answer to question 5 (a) is in the affirmative must the Joint Session called by the Governor be held not later than the second Wednesday in May of the year of the first annual session of such General Court?

"7. If the answer to question 5 (b) is in the affirmative must the Joint Session called by the Governor be held not later than the second Wednesday in May of the year of the second annual session of such General Court?

"8. If the two branches of a General Court fail to continue a Joint Session from time to time until final action on a pending proposal for amendment to the Constitution which was introduced in the first annual session of such General Court and which was laid before said Joint Session not later than the second Wednesday in May of the year of the first annual session of such Gen-

eral Court, must the Governor under Article XLVIII of
the Amendments call a continuance of such Joint Session
to continue consideration of said proposal:

(a) Not later than the second Wednesday in May of the
year of the first annual session of such General Court;
or

(b) Not later than the second Wednesday in May of the
year of the second annual session of such General Court?

"9. If the answer to question 9 (a) is in the affirmative,
must the continuance of the Joint Session called by the
Governor be held not later than the second Wednesday
in May of the year of the first annual session of such
General Court?

"10. If the answer to question 9 (b) is in the affirmative,
must the continuance of the Joint Session called by the
Governor be held not later than the second Wednesday
in May of the year of the second annual session of such
General Court?

"11. May proposals for initiative amendment to the Con-
stitution under Article XLVIII of the Amendments be
introduced in the second annual session of a General
Court?

"12. May proposals for legislative amendment to the
Constitution under Article XLVIII of the Amendments
be introduced in the second annual session of a General
Court?

"13. If a proposal for a legislative amendment to the
Constitution is introduced by a member of either House
after the second Wednesday in May of the year of the
second annual session of a General Court and considera-
tion thereof is called for by vote of either House, may the
Governor call a Joint Session of the same General Court
after said second Wednesday in May to consider said pro-
posal for a legislative amendment?

"14. May the Governor and Council prorogue the second
annual session of a General Court which has not taken
final action on all proposed amendments to the Constitu-
tion of the Commonwealth which have been laid before a

Joint Session of said General Court in accordance with Article XLVIII of the Amendments?"

Question 1, we think, is substantially answered by what was said in *Opinion of the Justices*, 291 Mass. 578. In that instance, as in the present instance, immediately after a vote agreeing to a proposed amendment a motion to reconsider was made subject to Rule 70, and the joint session was thereupon declared dissolved without agreement as to the time for a subsequent joint session. In pursuance of new orders severally adopted by the two houses a second joint session was held on June 12 for the purpose of considering the motion to reconsider. The motion to reconsider was adopted, but consideration of the recurring question was postponed and the session adjourned without fixing any date for its continuance. Two subsequent joint sessions were held in pursuance of orders adopted by the two houses, the last action being to refer the proposal to a special committee. The Justices said that "Final legislative action" in § 4 quoted above "means such action according to established legislative procedure modified by the constitutional requirements of art. 48 of the Amendments" (291 Mass. at page 583); that it was competent for the joint session to adopt the rule for reconsideration; that the vote of June 11 was not final action because a motion for reconsideration had been made forthwith in conformity with the rule; and that "Adverse disposition must be made of that motion before the earlier vote would stand as the final action of the joint session" (page 584). We answer question 1 "No."

Question 2 asks whether the adjournments of the joint sessions of May 23, 1955, and May 9, 1956, without action upon the motion to reconsider and without agreement as to times for subsequent sessions terminated the motion to reconsider, with the result that the action of May 16, 1955, became final. This question is closely related to question 1. The answer depends upon what happened at the joint sessions of May 16, 1955, May 23, 1955, and May 9 and

May 14, 1956.  It can be argued that according to manuals of parliamentary practice a motion to reconsider is lost if not "called up" before the termination of the session or, in an assembly having regular sessions, before the termination of the next regular session.  See for example Robert's Rules of Order Revised, at pages 163–164.  But the joint session is not, or at least has not been, an assembly having regular sessions.  It has been called into being at irregular intervals by separate votes of the two houses or by the Governor. It has adopted its own rules, including a special rule governing reconsideration, which is Rule 70 of the Rules of the House of Representatives.  The purposes of allowing reconsideration are to permit time for further thought and to permit the attendance of members who may have been absent at the original vote.  Rule 70 provides for this, in most instances, by allowing at least a day to intervene between the original vote and any vote on reconsideration.  This rule deals with the subject of reconsideration in much detail.  Only part of it is quoted above.  It seems to us that this rule and Rules 71 and 72[1] were designed as full coverage of the subject.  Rule 70 contains provisions for the prompt making of the motion and automatic provisions for its prompt consideration, but it does not fix any time for final action upon the motion.  It does not provide that the motion shall lapse if not acted upon at any particular time.  In dealing with a question of this kind we should remember that the General Court of Massachusetts is one of the oldest deliberative assemblies in the world.  For a great many years the two houses have had their own rules, including Rule 70 of the House of Representatives.  The Senate has had a similar rule.  Rule 53 of the Rules of the Senate.[2]  These rules are not in all respects in accord with what is commonly stated to be the general parliamentary law. Caution should be used in applying general statements in manuals of parliamentary law to the proceedings of a body

[1] Manual for the General Court, 1955–1956, page 581.

[2] Manual for the General Court, 1955–1956, page 546.

like the General Court which has its own traditions and practices. It may be significant to note that the presiding officer of the joint sessions, who was the president of the Senate and presumably familiar with legislative custom, declared the joint session of May 16, 1955, dissolved, stating that the motion to reconsider, with similar motions on other matters, "would be subject to Rule 70 of the House, under which Rule the motion to reconsider would be considered at a subsequent Joint Session to be agreed upon." Similar statements were made by the president in relation to motions to reconsider on other matters at the joint session of May 14, 1956. None of these rulings (for we take them to have been rulings) appears to have been challenged by anyone, and so far as appears from the order there was no objection to the holding of a new joint session on each of the occasions mentioned for the purpose of further considering the 1954 and 1955 amendments.[1] On the occasion dealt with in *Opinion of the Justices*, 291 Mass. 578, a similar ruling was made, and at the next joint session the point of order that the session was without warrant in the Constitution was overruled. 291 Mass. at page 579. We shall mention that opinion again in a moment. For the present the point is that a consistent procedure appears to have been adopted by persons familiar with the application of the legislative rules and accepted by the membership in a number of instances according to which a motion to reconsider made at a joint session has been held open for consideration at one or more subsequent joint sessions.

Moreover, it appears that the motion "was considered" at the joint sessions of May 23, 1955, and May 9, 1956, but in each instance the session was adjourned without action on the motion. Journal of the Senate, 1955, 929–932. Journal of the Senate, 1956, 885–888.

Applying Rule 70 as closely as the nature of intermittent joint sessions will permit, its requirements seem to have

[1] It appears, however, from the Journal of the Senate, 1955, 861–864, that objection was made on May 16, 1955, and ruled out of order by the chair, and that the ruling was sustained by the joint session.

been observed. At any rate, no objection appears to have been made to the course taken with reference to the motion.

In the preceding discussion we have not overlooked Rule 101 of the House of Representatives,[1] presumably also adopted by the joint session, which provides that the rules of parliamentary practice shall govern the House in all cases to which they are applicable and in which they are not inconsistent with the rules. Our point is that Rule 70, as interpreted and applied at the joint sessions and taken in connection with Rules 71 and 72, covered the field and was controlling.

It remains to refer again to *Opinion of the Justices*, 291 Mass. 578. That opinion dealt with questions closely analogous to the question now under discussion. In that instance, as in this, an amendment was voted upon favorably, and the joint session was declared dissolved after a motion for reconsideration had been made. In pursuance of orders severally adopted by the two houses, a second joint session was held at which the motion to reconsider was adopted. The Justices said that the original favorable vote upon the amendment was not final action "because, in conformity to the rules, motion for reconsideration was made forthwith. Adverse disposition must be made of that motion before the earlier vote would stand as the final action of the joint session." 291 Mass. at page 584. In that instance, as in this, reconsideration prevailed at a subsequent joint session.

Unless we are to repudiate what was said in that opinion we must answer question 2 "No." We so answer it.

Question 3 we answer "No." There is nothing in art. 48, as amended, that requires final action by a joint session within any specified time. *Opinion of the Justices*, 291 Mass. 578, 586.

Question 4 hardly admits of a satisfactory answer. The requirement that a proposal be laid before a joint session not later than the second Wednesday in May, which must

---

[1] Manual for the General Court, 1955–1956, page 590.

have been drafted at the time when elections were held annually (*Opinion of the Justices*, 291 Mass. 578, 585), followed by the requirement of submission to the people at the next State election may indicate an expectation that action will be taken in time for the proposal to go on the ballot at the election in November of the year in which the final favorable action is taken. This may give rise to some moral obligation to act in time, if favorable action is contemplated. But there is no obligation of any kind to act favorably at all. In any event there is no means of compelling a joint session to take any action, and we see nothing to prevent the taking of favorable action too late to place the proposal on the ballot in the same year.

To both branches of question 5 as put to us we answer "No." The date of the second Wednesday in May is merely the date by which a proposal shall be laid before a joint session. *Opinion of the Justices*, 237 Mass. 589. *Opinion of the Justices*, 318 Mass. 793, 796. We find nothing limiting the time within which a Governor must call a joint session to consider a proposal that has been laid before a joint session in either year within the time required. If the proposal has not been seasonably laid before any joint session, and the two houses fail to agree upon a time for holding any such session we think the Governor must call such a session, so that the proposal may be laid before it not later than the second Wednesday in May of the year in which the proposal was introduced. He may call subsequent joint sessions if necessary, and if the houses fail to agree upon them.

Questions 6 and 7 may be answered together. In connection with these questions it is well to recall that when art. 48 was drafted the members of the two houses were elected annually, but at the same election in 1918 that adopted art. 48, there was also adopted art. 64 providing for biennial elections, while the provision for annual sessions contained in art. 10 of the Amendments remained unchanged. This was later altered by art. 72 to provide for biennial sessions, but was restored by art. 75. It seems

to us that the two sessions now required in each biennium are the successors of the annual sessions formerly held. The two houses, however, remain the same during the entire two year period. We think therefore that after a proposal for a legislative amendment has been laid before a joint session not later than the second Wednesday in May in either year, if the General Court fails to act upon it or to agree upon a further joint session to consider it, the Governor is required to call such session at some reasonable time during the life of that General Court. See *Opinion of the Justices*, 291 Mass. 578, 585–587.

Question 8 in both branches is answered "No." If a proposed legislative amendment has been seasonably laid before a joint session not later than the second Wednesday of May of the year of its introduction, we find no time limit during the life of that General Court within which the Governor must call a continuance of the session.

Questions 9 and 10 seem to require no answer.

Question 11 requires no answer, since no initiative amendment is mentioned in the order, and, without implying a difference, we prefer to confine our answers to the situation presented. See *Opinion of the Justices*, 226 Mass. 607, 612.

Question 12 we answer "Yes."

Question 13 we answer "No," since art. 48, The Initiative, IV, § 2, as amended by art. 81, § 1, requires that the proposal be laid before a joint session not later than the second Wednesday in May. *Opinion of the Justices*, 237 Mass. 589.

Question 14 raises a question of accommodation between c. 2, § 1, art. 5, of the original Constitution which gives the Governor power to prorogue the General Court and art. 48 of the Amendments, The Initiative, IV, § 2, as amended, which, if read very literally, might require the Governor to continue to call joint sessions as often as the preceding one failed to act until the term of that General Court expires. But art. 48 of the Amendments as amended does not mention the original c. 2, § 1, art. 5, or purport expressly to repeal or amend it. We think art. 48 was adopted in the expectation that all officers concerned would perform the

duties required of them at the proper times. We do not believe it was intended that an unseemly controversy should be carried on between the Governor and the General Court to the limits of futility. We think therefore that the true and reasonable construction of the two parts of the Constitution taken together is that whenever the Governor has made a genuine effort to secure action by joint session and has become reasonably convinced that it will be impossible to secure it, he may exercise his powers of prorogation, even though final action on all proposed amendments has not been taken.

> STANLEY E. QUA.
> JAMES J. RONAN.
> RAYMOND S. WILKINS.
> JOHN V. SPALDING.
> HAROLD P. WILLIAMS.
> EDWARD A. COUNIHAN, JR.
> ARTHUR E. WHITTEMORE.