JACK H. BACKMAN vs. SECRETARY OF THE COMMONWEALTH.

Suffolk.  August 4, 1982. — November 1, 1982.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*General Court,* Special session. *Constitutional Law,* General Court: special session; Amendment of Constitution. *Jurisdiction,* Justiciable question, Political question. *Governor.*

The Governor, with the advice of the Council, violated no specific or necessarily implicit requirement of the State Constitution by calling a joint session of the General Court to continue deliberation on a proposed constitutional amendment, without first calling the two branches of the General Court into session as a Legislature pursuant to his powers under Part II, c. 2, § 1, art. 5, of the State Constitution and, where the members of the General Court in joint session accepted the Governor's call and acted on various matters, this court did not disturb the procedure under which the joint session was convened. [550-554] LIACOS, J., dissenting.

Discussion of the political question doctrine, as articulated by the Federal courts, and its relation to the jurisprudence of the Commonwealth. [554-556]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on September 18, 1980.

The case was reported by *Wilkins,* J.

*William P. Homans, Jr.* (*Anne E. Braudy* with him) for the plaintiff.

*Alexander G. Gray, Jr.,* Assistant Attorney General, for the defendant.

*Scott P. Lewis, Marjorie Heins & Alan Jay Rom,* for Massachusetts Campaign Against Restoration of the Death Penalty, amicus curiae, submitted a brief.

WILKINS, J.  On September 18, 1980, in response to a proclamation issued by the Governor, with the advice of the Executive Council, the General Court met in continuance

of a joint constitutional session that had adjourned on July 2, 1980. On September 19, 1980, the joint session approved a proposed constitutional amendment permitting capital punishment in the Commonwealth. A subsequent joint session, held in May, 1982, also approved the proposed constitutional amendment. Thus, the proposed amendment must be submitted to the people at the November 2, 1982, State election,[1] unless, as the plaintiff argues, this court should declare invalid the action of the September, 1980, joint session on the ground that the Governor did not follow appropriate procedures in calling that joint session to continue its deliberations on pending matters.

We heard argument in this case on August 4, 1982, and, on August 6, 1982, we ordered that judgment should be entered for the defendant Secretary of the Commonwealth, thus permitting him to submit the proposed constitutional amendment to the people at the November 2, 1982, State election. This opinion is issued in explanation of that order.

The plaintiff's basic contention is that the Governor acted contrary to the Constitution in purporting to call a joint session under art. 48 of the Amendments without first calling the General Court into session pursuant to his powers under Part II, c. 2, § 1, art. 5, of the Massachusetts Constitution.[2] We conclude that there is no explicit or necessarily implicit constitutional provision directing the manner in which the Governor shall call the General Court into joint session and

---

[1] If at a joint session a legislative amendment receives the affirmative votes of a majority of all the members elected, it is to be referred to the next General Court. Art. 48 of the Amendments to the Massachusetts Constitution, The Initiative, IV, § 4. "If in the next general court a legislative amendment shall again be agreed to in joint session by a majority of all the members elected, . . . such fact shall be certified by the clerk of such joint session to the secretary of the commonwealth, who shall submit the amendment to the people at the next state election." Art. 48, The Initiative, IV, § 5.

[2] Part II, c. 2, § 1, art. 5, of the Massachusetts Constitution provides, in part, that the Governor may call the Legislature "together sooner than the time to which it may be adjourned or prorogued, if the welfare of the Commonwealth shall require the same."

that, in the circumstances, where the members of the General Court in joint session accepted the Governor's call and the joint session acted on various matters, this court should not disturb the procedure adopted by the Governor and accepted by the Legislature.

Our narrative, taken from a statement of agreed facts, starts with the assembling of a joint session of the General Court in May, 1980. Among the proposals for amendments to the Constitution of the Commonwealth was one "providing for capital punishment." The joint session took no final action on this proposal before adjourning on July 2, 1980. On July 5, 1980, in response to an order adopted by the Senate and the House of Representatives, the Governor, with the advice and consent of the Executive Council, prorogued the General Court until the day preceding the first Wednesday of January, 1981.

On September 10, 1980, the Governor sent a letter to the Executive Council stating that, subject to the Council's advice, he proposed to call "the members of the general court to assemble in special session" on September 18, 1980, at 11 A.M. On September 17, 1980, the Council advised the Governor of its consent to his request to recall the Legislature into special session and the Governor issued a proclamation calling the members of the General Court to assemble on September 18, 1980, "in continuance of joint constitutional session, which adjourned on July 2, 1980, to the end that final action may be taken upon all Proposals for Constitutional Amendments properly before it."[3] The Governor's

---

[3] The proclamation reads as follows:

"WHEREAS, the Constitution of the Commonwealth provides that 'the Governor with the advice of council, shall have full power and authority,' during the recess of the General Court, 'to call together sooner than the time to which it may be adjourned or prorogued, if the welfare of the Commonwealth shall require the same'; and

"WHEREAS, the Constitution further provides that if a Proposal for a Constitutional Amendment is introduced into the General Court by initiative petition or by legislative amendment, such proposal shall be laid before a joint session of the two houses not later than the second Wednesday in May, and if the two houses fail to continue such joint session until

request to the Council and the Council's advice to the Governor speak in terms of calling or recalling the Legislature into special session, and the first "whereas" clause of the Governor's proclamation incorporates the language of Part II, c. 2, § 1, art. 5, concerning the calling of the General Court into session sooner than the time to which it prorogued. The operative language of the proclamation, however, did not explicitly call the General Court into session as a General Court but only called the members of the General Court into joint constitutional session. It is the Governor's alleged omission of any call of the General Court into session as a Legislature on which the plaintiff rests his argument.

At the joint session of September 18, 1980, Senator Backman, the plaintiff in this action, raised a point of order challenging the Governor's power to call the members of the General Court into joint session following adjournment of the joint session on July 2, 1980, and the prorogation of the General Court on July 5, 1980. The President of the Senate ruled that the point of order was not well taken. No appeal was taken from the ruling of the chair. Before us, the plaintiff neither argues nor concedes the point that, after prorogation of the General Court, the Governor lacked constitutional authority to recall the General Court and then to call a joint constitutional session. We do not pass on the point, although we note that there is no explicit constitutional pro-

---

final action has been taken on all amendments pending, the Governor shall call such joint session or continuance thereof; and

"WHEREAS, on July 5th the General Court prorogued without taking final action on all Proposed Constitutional Amendments properly laid before it; and

"WHEREAS, the welfare of the Commonwealth requires that the General Court assemble to resume joint constitutional session in order that the public confidence in the constitutional process be maintained;

"NOW, THEREFORE, believing that the welfare of the Commonwealth so requires, I hereby make proclamation to the members of the General Court of Massachusetts calling them to assemble at the State House on September 18, 1980 at 11 o'clock in the forenoon in the chamber of the House of Representatives in continuance of joint constitutional session, which adjourned on July 2, 1980, to the end that final action may be taken upon all Proposals for Constitutional Amendments properly before it."

vision barring the Governor from doing so. See *Opinion of the Justices,* 334 Mass. 745, 758 (1956) ("[W]e find no time limit during the life of [a] General Court within which the Governor must call a continuance of the session").

Senator Backman then raised a further point of order challenging the Governor's proclamation "insofar as it may restrict the purpose for which the General Court was called together" because it unconstitutionally intruded on the law-making power of the General Court. The President of the Senate, as presiding officer, stated that it was not within his province to rule on constitutional questions. No appeal was taken from this ruling. Because the General Court did not undertake to transact any business as a legislature, we need not consider whether the Governor's proclamation restricted, or could have restricted, legislative action in the face of a desire by the General Court to transact legislative business apart from matters considered in joint session. As far as appears in the record, Senator Backman did not raise the precise issue involved in this action during the September, 1980, joint session.

As indicated above, the amendment authorizing capital punishment was approved by the September, 1980, joint session and referred to the next General Court. A joint session held during the course of the 1982 legislative session approved the proposed constitutional amendment by a majority of all members elected, and the amendment was certified to the Secretary of the Commonwealth pursuant to art. 48 of the Amendments to the Constitution, as amended by art. 81 of the Amendments.

The plaintiff commenced this proceeding in September, 1980, in the Supreme Judicial Court for the County of Suffolk, but no action was taken on the merits of the plaintiff's challenge to the propriety of the Governor's call of the September, 1980, joint session until after the proposed constitutional amendment was approved for a second time. See *Opinion of the Justices,* 386 Mass. 1201, 1212-1213 n.3 (1982). The case is before us on a reservation and report, by a single justice of this court, including the plaintiff's substi-

tuted complaint, the defendant's motion to dismiss the substituted complaint, and a statement of agreed facts.[4]

The defendant argues that the issue before the court is a political question that we should refrain from answering. The concept of a nonjusticiable political question has been more fully developed under the Constitution of the United States than under our State Constitution. See *Goldwater* v. *Carter,* 444 U.S. 996 (1979); *Powell* v. *McCormack,* 395 U.S. 486 (1969); *Baker* v. *Carr,* 369 U.S. 186 (1962). Although we have been faced with arguments that an issue before us presented a political question we should not answer (see *Moe* v. *Secretary of Admin. & Fin.,* 382 Mass. 629, 641-642 [1981]; *Colo* v. *Treasurer & Receiver Gen.,* 378 Mass. 550, 552-553 [1979]; *Loring* v. *Young,* 239 Mass. 349, 360-361 [1921]), we have never explicitly incorporated the Federal doctrine into our State jurisprudence. We decline to avoid deciding the issue before us by applying the conclusory label that it is a "political question." As the opinions just cited demonstrate, this court has an obligation to adjudicate claims that particular actions conflict with constitutional requirements.

Thus, for example, this court has the power and the duty to pass on challenges to procedures by which a constitutional amendment has been proposed where the challenge is based on a claim that explicit or necessarily implicit constitutional requirements have not been followed. See *Sears* v. *Treasurer & Receiver Gen.,* 327 Mass. 310, 320-322 (1951) (initiative petition). If a proposed constitutional amendment is not laid before a joint session on or before the second Wednesday in May (as art. 48, The Initiative, IV, § 2, as amended by art. 81 of the Amendments now re-

---

[4] The defendant advances no challenge to the plaintiff's standing as a citizen and qualified voter to seek relief in this action. See *Cohen* v. *Attorney Gen.,* 354 Mass. 384, 387 (1968); *Sears* v. *Treasurer & Receiver Gen.,* 327 Mass. 310, 314-315 (1951). The plaintiff's right to challenge the propriety of the Governor's action is not lost because, as a senator present at the September, 1980, joint session, he did not raise the issue now presented or because he presented a somewhat related issue by unsuccessfully raising a point of order.

quires), any approval of that amendment in joint session and by the people would be invalid (see *Opinion of the Justices*, 237 Mass. 589, 590-591 [1921]), and this court appropriately would so rule. Similarly, if the issue arose whether, after prorogation of the Legislature, the Governor had the power to recall it and then to convene a joint constitutional session, we would treat that question as one appropriate for consideration in a law suit, filed at the appropriate time, challenging any purported final action of the reconvened joint session.

Here, however, the Governor's action runs afoul neither of any specific nor of any necessarily implicit requirement of the Constitution. He advised the Council that he intended to recall the Legislature, and the Council granted its consent. The Governor then issued a proclamation in which he quoted his authority to recall the Legislature. Although his proclamation did not explicitly recall the Legislature, his actions can reasonably be construed to have constituted a recall of the Legislature. The General Court convened in joint constitutional session. Senator Backman raised a challenge to the Governor's proclamation arguing that it improperly limited the power of the General Court to act as a Legislature. This challenge, which is peripherally related to the issue argued before us, was rejected. The joint session accepted the Governor's recall and proceeded to act on various matters.

In these circumstances, mindful of the principle of separation of powers so carefully stated in art. 30 of the Declaration of Rights, this court should not infer specific constitutional procedures that the executive and legislative branches of government must follow. No constitutional requirement was violated. The Governor and the General Court could have reasonably concluded that the General Court had been properly recalled and called into joint constitutional session. Although the plaintiff argues that his challenge is not merely one of form, the fact remains that his challenge would lose its force if the Governor had issued two proclamations — one recalling the General Court and the second calling the General Court into joint constitutional session. We

believe that the two steps can appropriately be carried out in one document. Where, as here, the Constitution does not prescribe the procedures to be followed, this court should not reject the means selected by the Governor to achieve a constitutionally permissible end where the Legislature acquiesced in his determination. If, however, as we have said, the Constitution does set forth procedures to be followed, our duty to disapprove any departure from those procedures is clear. See, e.g., *Massachusetts Teachers Ass'n* v. *Secretary of the Commonwealth,* 384 Mass. 209, 229 (1981); *Sears* v. *Treasurer & Receiver Gen.,* 327 Mass. 310, 321-322 (1951).

We need not reach the defendant's further argument that, in any event, the General Court convened itself and that the Governor's proclamation was not necessary to support the action of the joint session. It does not appear that the General Court convened itself pursuant to procedures looked on favorably in *Opinion of the Justices,* 303 Mass. 664, 675 (1939), and *Opinion of the Justices,* 294 Mass. 623, 626-627 (1936).


LIACOS, J. (dissenting). Article 48 of the Amendments to the Massachusetts Constitution requires that a legislative amendment to that document be approved by joint constitutional session of two succeeding sessions of the General Court before it can be submitted to the people. Art. 48, The Initiative, IV, §§ 4 & 5. Section 2 provides that "if the two houses fail to agree upon a time for holding any joint session hereby required, or fail to continue the same from time to time until final action has been taken upon all amendments pending, the governor shall call such joint session or continuance thereof." Art. 48, The Initiative, IV, § 2, as amended by art. 81 of the Amendments. The question before us is what steps the Governor must take, after the General Court has been prorogued, to exercise his power to call the General Court into a joint constitutional session. For reasons that are difficult to discern, the court

appears to hold that "the Governor's action runs afoul neither of any specific nor of any necessarily implicit requirement of the Constitution." *Supra* at 555. Because I believe that the position taken by the court misconceives our role under our Constitution, I dissent.

I believe that the outcome of this case should turn on a thorough examination of the Massachusetts Constitution and of our cases. The essential issue is the scope of legislative and executive power under the procedures mandated by art. 48, The Initiative, IV, and Part II, c. 2, § 1, art. 5, of the Massachusetts Constitution. Although the court acknowledges the fact that "we have never explicitly incorporated" the Federal political question doctrine "into our State jurisprudence," *supra* at 554, the approach it takes is reminiscent of such an approach. Consequently, I defer consideration of Massachusetts law to comment briefly on this doctrine.

1. *The Federal political question doctrine.* The court concedes that the political question doctrine has never been adopted in Massachusetts. Perhaps recognizing that the doctrine is a source of confusion rather than of clarity, our predecessors have wisely avoided the doctrine. *Moe* v. *Secretary of Admin. & Fin.*, 382 Mass. 629, 641-642 (1981). *Colo* v. *Treasurer & Receiver Gen.*, 378 Mass. 550, 552-553 (1979).[1] *Loring* v. *Young*, 239 Mass. 349, 360-361 (1921). One of the ironies of the court's approach is that it parallels the political question doctrine at a time when it is in a state of confusion and decline in the Federal courts. See L. Tribe, American Constitutional Law § 3-16, at 71-72 n.1 (1978); Henkin, Is There a "Political Question" Doctrine?, 85 Yale L.J. 597 (1976). In recent years, the Supreme Court of the

---

[1] In *Colo* v. *Treasurer & Receiver Gen.*, 378 Mass. 550, 553 (1979), the court stated: "Without in any way attempting to invade the rightful province of the Legislature to conduct its own business, we have the duty, certainly since *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 178 (1803), to adjudicate a claim that a law and the actions undertaken pursuant to that law conflict with the requirements of the Constitution. 'This,' in the words of Mr. Chief Justice Marshall, 'is of the very essence of judicial duty.'"

United States has largely rejected arguments that issues before it presented nonjusticiable political questions. This process began in *Baker* v. *Carr*, 369 U.S. 186 (1962), where the Court held that issues of legislative apportionment did not present political questions. In *Powell* v. *McCormack*, 395 U.S. 486 (1969), the Supreme Court held that the issue whether a member of the House of Representatives was entitled to take his seat did not present a political question. In *United States* v. *Nixon*, 418 U.S. 683 (1974), the Court held that the issue of executive privilege did not present a political question.[2]

As it has been developed in the Federal courts, the doctrine is nothing more than a number of "analytical threads."[3] Under our State law, however, our sole object is to determine whether the Legislature or Chief Executive has acted pursuant to a constitutional grant of authority and has not acted contrary to any constitutional limitation. If so, then it can be said that the act of the Legislature or the Chief Executive is only open to political challenge.[4] If the constitutional procedures have not been met, it is our judicial duty to so declare.

---

[2] Only in *Gilligan* v. *Morgan*, 413 U.S. 1 (1973), has the Supreme Court in recent years invoked the doctrine, and that case is hardly relevant here. In *Gilligan* the Court considered a challenge to the training of the Ohio National Guard. The Court found that the area of military training was beyond the competence of the judiciary to evaluate. *Id.* at 10-11.

[3] In *Baker* v. *Carr*, 369 U.S. 186, 217 (1962), the Supreme Court found that cases held to raise a political question involved at least one of the following formulations: "a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

[4] See Henkin, Is There a "Political Question" Doctrine?, 85 Yale L.J. 597, 597-617 (1976).

2. *Judicial scrutiny of the amendment process under Massachusetts law.* Whatever the merits of the Federal doctrine,[5] our cases demonstrate that this court has carefully scrutinized the enactment of initiative and legislative amendments to the Constitution and has required strict compliance with its provisions. In *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 320 (1951), the court stated that art. 48 of the Amendments was drafted "with certain precisely defined safeguards" designed "to prevent hasty action." It reasoned that "[s]ince the people have themselves adopted the Constitution with its amendments for their government, they are bound by the provisions and conditions which they themselves have placed in it, and when they seek to enact laws by direct popular vote they must do so in strict compliance with those provisions and conditions. See *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 247-248 [1946]. Failure to comply will mean that no valid law has been enacted, no matter how great the popular majority may have been in its favor. Only by preserving this fundamental principle can constitutional government be preserved and orderly progress assured. The question whether or not the requirements of the Constitution have been observed and a valid law has been enacted is a justiciable question to be determined in the last analysis by the judicial department of the government whenever the question arises in a proper proceeding in court." *Id.* at 320-321.

The language of the court could not be more explicit. Plainly, the duty of this court to pass on the validity of the process utilized in regard to a proposed constitutional amendment cannot be denied. See *Moe* v. *Secretary of Admin. & Fin.*, *supra*; *Opinion of the Justices*, 334 Mass. 745 (1956); *Sears* v. *Treasurer & Receiver Gen.*, *supra*;

---

[5] The political question doctrine is akin to the law of standing in being a prudential doctrine which allows the "federal courts to define their own limitations." L. Tribe, American Constitutional Law § 3-16, at 79 (1978). And like the political question doctrine, the Federal law of standing has not been incorporated into our jurisprudence. See *Sears* v. *Treasurer & Receiver Gen.*, 327 Mass. 310, 314-315 (1951).

*Bowe* v. *Secretary of the Commonwealth,* 320 Mass. 230, 247-248 (1946); *Opinion of the Justices,* 291 Mass. 578 (1935); *Loring* v. *Young, supra; Opinion of the Justices,* 237 Mass. 589 (1921).

3. *Judicial scrutiny of the procedures employed to call the General Court into session under Massachusetts law.* Our cases also demonstrate that the General Court is not empowered to adopt whatever procedures it wishes to call itself into session. In *Opinion of the Justices,* 294 Mass. 623, 623-624 (1936), the Justices were asked, inter alia, whether the power of the legislative bodies to call themselves into session "at such times . . . as they shall judge necessary" could be exercised upon either (1) "the call of the presiding officers of the two branches" or (2) the "petition of a majority or other designated proportion of the members of each branch" in order that they may "thereafter transact any business as a General Court." In a carefully crafted response, the Justices, while clearly delineating an area of legislative discretion, stated that the Constitution placed procedural limitations on the ability of the General Court to call itself into session.

The Justices set forth the principle that "persons scattered through the Commonwealth, although elected as members of the Senate and House of Representatives, do not constitute the General Court; they must be convened according to law in order to exercise any functions as a General Court." *Id.* at 626. "According to law," in the opinion of the Justices, meant that the General Court, as a body, had to judge whether it was necessary to assemble. Thus, it was not in the power of the General Court to enact procedures through which its presiding officers could call the General Court into session.

Similarly, in *Opinion of the Justices,* 303 Mass. 664 (1939), the Justices found limitations on the power of the General Court to call itself into session. The court was asked to determine whether the General Court could call itself into session after being adjourned or prorogued if it had not previously determined that an assembly was neces-

sary. The Justices answered the question in the affirmative, *id.* at 676, and recognized that the General Court had discretion to enact an appropriate method of assembling in a special session.[6] But the Justices stated that whatever procedure the General Court enacted had to provide "a reasonable opportunity" for every member "to express in an orderly manner his opinion as to the necessity for a special session on a specified date." *Id.* at 675. Plainly, the Justices could not have concluded otherwise.

4. *The merits.* The import of the cases discussed above is clear. The court applies the wrong standard of review. The standard is not properly framed as what the "Legislature acquiesced in" or what the "Governor and the General Court could have reasonably concluded." *Supra* at 555.

Rather, we must insist on strict compliance with the provisions of the Constitution relating to the amendment process. *Sears* v. *Treasurer & Receiver Gen., supra.* It must therefore be shown that the Governor's call of the General Court into a joint constitutional session was made pursuant to grant of authority from the Constitution.

The grant of power under art. 48, The Initiative, IV, § 4, contemplates that the Governor may call the General Court into a constitutional session only when it has been previously called to assembly as a General Court. Cf. *Opinion of the Justices,* 294 Mass. at 626 (General Court must be convened according to law in order to exercise any functions as a General Court).

Looking to the operative language of the Governor's proclamation, it calls the members of the General Court to assemble "in continuance of joint constitutional session, which adjourned on July 2, 1980, to the end that final action may be taken upon all Proposals for Constitutional Amendments properly before it." The Governor had no

---

[6] The difficulty with the court's opinion is its failure to undertake a careful consideration of the scope of discretionary power accorded the Legislature and the Chief Executive. Instead, the court simply concludes that the Constitution was not violated.

power to act in that fashion after the Legislature had been prorogued. The Governor had prorogued the Legislature on July 5, 1980, and he did not exercise his power under the Constitution, Part II, c. 2, § 1, art. 5, to call the General Court back into session. Thus, the General Court was never properly convened, and its actions during the purported joint constitutional session were to no effect. The proposed amendment has not been approved by two validly convened successive constitutional sessions of the General Court. It cannot now be submitted to the people. Art. 48, The Initiative, IV, § 5.