C. Joseph Doyle & others[1] *vs.* Secretary of the Commonwealth & another.[2]

Suffolk. December 20, 2006. - December 27, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Marriage. General Court. Mandamus. Practice, Civil,* Action in nature of mandamus. *Declaratory Relief. Constitutional Law,* Amendment of the Constitution, Initiative petition, General Court, Governor. *Initiative. Governor.*

This court concluded that the plaintiffs could not obtain a judgment declaring that art. 48 of the Massachusetts Constitution imposed an obligatory constitutional duty on the Legislature in joint session to take final action on a certain initiative amendment (which would amend the State Constitution to define marriage as the union of one man and one woman), by a vote of yeas and nays, before the legislative session expired, where the plaintiffs did not set forth any legally tenable judicial enforcement role in ensuring that the members of the joint session comply with their constitutional duties under art. 48, and where case law provided no enforcement mechanisms. [116-121]

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on November 24, 2006.

The case was reported by *Cowin,* J., on a statement of agreed facts.

*John D. Hanify (Daniel J. Dwyer* with him) for the plaintiffs.

*Peter Sacks,* Assistant Attorney General, for the defendants.

*Donald K. Stern, Nikki Jean Fisher, & Jeff Goldman,* Committee for Health Care for Massachusetts & others, amici curiae, submitted a brief.

---

[1]Raymond L. Flynn, Richard F. Guerriero, Bronwyn E. Loring, Roberto S. Miranda, Philip D. Moran, Joseph R. Nolan, Jossie E. Owens, Richard W. Richardson, Mitt Romney (the Governor), and Philip Travis (a member of the General Court). The plaintiffs are registered voters and residents of the Commonwealth and signatories to the petition that proposed the constitutional amendment which is the subject of this action.

[2]President of the Massachusetts Senate.

GREANEY, J. As the final day of the current legislative session approaches, the General Court has yet to vote on the merits of a proposed amendment to the Massachusetts Constitution, introduced pursuant to art. 48, The Initiative, IV, §§ 1-5, as amended by art. 81, § 1, of the Amendments to the Constitution of the Commonwealth, which is currently pending before a joint session of the two houses. If eventually adopted by the people, the initiative would amend the Constitution to define marriage as the union of one man and one woman. The plaintiffs seek a declaration, essentially, that art. 48 imposes an obligatory constitutional duty on the Legislature in joint session to take final action on the initiative amendment, by a vote of yeas and nays, before the legislative session expires on January 2, 2007.[3] The plaintiffs filed their complaint in the county court pursuant to G. L. c. 214, § 1.[4] A single justice reserved and reported the matter to the full court on a statement of agreed facts. We conclude that, while the plaintiffs cannot obtain declaratory judgment or mandamus against the Legislature, and, therefore, the complaint must be dismissed, it is our obligation, in these circumstances, to restate what art. 48 requires.

1. The facts are as follows. The petition proposing the initiative amendment (signed by the plaintiffs) was certified by the Attorney General as having met the requirements for presentation to the joint session of the 2005-2006 General Court. Art.

---

[3]In their brief, the plaintiffs requested a different declaration, that the Senate President, as the presiding officer at the joint session, has a nondiscretionary constitutional obligation to convene and maintain a joint session of the General Court until such time as final action is taken on the proposed initiative amendment, by a vote of yeas and nays, before the expiration of the legislative session, and that his failure to do so is an abdication of his constitutional duty. At oral argument, counsel for the plaintiffs conceded that, under the rules governing the joint session, the presiding officer has no authority to force members to vote on a proposed initiative amendment.

[4]In their complaint, the plaintiffs also requested an order in the nature of mandamus directed to the Senate President to reconvene the joint session, on or before January 2, 2007, and to present the terms of the proposed initiative amendment to the joint session for a vote on its merits as required by art. 48. Failing such a vote, the plaintiffs in their complaint request that this court enter an order directing the Secretary of the Commonwealth to place the initiative amendment on the ballot at the 2008 Statewide election for approval or rejection by the voters. It became apparent, during oral argument, that the plaintiffs have abandoned these requests for relief, which could not be granted in any event.

48, The Initiative, II, § 3, as amended by art. 74, § 1, of the Amendments to the Constitution of the Commonwealth. The initiative petition was filed with the Secretary of the Commonwealth (Secretary), *id.*, and the signatures of the required number of qualified voters (at least three per cent of the votes cast in the 2002 gubernatorial election) were collected. Art. 48, The Initiative, V, § 1, as amended by art. 81, § 2. The Secretary determined that 123,356 allowable certified signatures had been collected (more than required) and transmitted the initiative petition to the General Court, where it was deemed introduced and pending. The initiative amendment was placed as the twentieth item on the joint session's calendar. The full text of the initiative amendment is as follows:

> "When recognizing marriages entered into after the adoption of this amendment by the people, the Commonwealth and its political subdivisions shall define marriage only as the union of one man and one woman."

The joint session has convened three times since the initiative amendment was placed on the calendar, each time without considering its merits. At its most recent assembly on November 9, 2006, by a roll call vote of 109-87, the joint session voted to recess until 2 P.M. on January 2, 2007, the last day of the 2005-2006 legislative session.[5]

2. We now discuss the applicable law. The members of the joint session have a constitutional duty to vote, by the yeas and nays, on the merits of all pending initiative amendments before recessing on January 2, 2007. With respect to legislative action

---

[5]The Committee for Health Care for Massachusetts, and ten individual qualified voters, have submitted an amicus brief calling to our attention a second initiative amendment still pending before the joint session, which, if successful, would establish a duty on the part of the Commonwealth to make health care insurance available to all Massachusetts residents. A joint session of the 2003-2004 General Court had approved the health care initiative amendment, by a roll call vote of 153 to 41, and it was transmitted to the 2005-2006 General Court. See art. 48, The Initiative, IV, § 4, of the Amendments to the Constitution of the Commonwealth. The amici have filed a complaint in the county court seeking a declaration that "the 2005-2006 General Court's unconstitutional failure to vote on the health care amendment is without legal effect, and that the Secretary of the Commonwealth should place the proposed

on proposals for constitutional amendments introduced to the General Court by initiative petition, the language of art. 48 is not ambiguous. Section 2 of art. 48, The Initiative, IV, provides:

> "If a proposal for a specific amendment to the constitution is introduced into the general court by initiative petition . . . such proposal shall, not later than the second Wednesday in May, be laid before a joint session of the two houses, at which the president of the senate shall preside; and if the two houses fail to agree upon a time for holding any joint session hereby required, or fail to continue the same from time to time until final action has been taken upon all amendments pending, the governor shall call such joint session or continuance thereof."

Section 3 provides:

> "A proposal for an amendment to the constitution introduced by initiative petition shall be voted upon in the form in which it was introduced, unless such amendment is amended by vote of three-fourths of the members voting thereon in joint session, which vote shall be taken by call of the yeas and nays if called for by any member."

Section 4 further provides:

> "Final legislative action in the joint session upon any amendment shall be taken only by call of the yeas and nays, which shall be entered upon the journals of the two houses; and an unfavorable vote at any stage preceding final action shall be verified by call of the yeas and nays, to be entered in like manner. At such joint session . . . an initiative amendment receiving the affirmative votes of not less than one-fourth of all the members elected[] shall be referred to the next general court."

The Constitutional Convention of 1917-1918, at which the procedure for the adoption of a constitutional amendment by popular initiative was proposed, confirms the plain meaning and purpose of the above text. See 2 Debates in the Constitutional

amendment on the 2008 statewide ballot." They have not, however, requested that their complaint be heard and acted on.

Convention 1917-1918, at 16, 39 (1918) (quoting two propo-
nents as stating that purpose of art. 48 is to "provide[] the
machinery by which the will of the voters of this Com-
monwealth may be made effective" and "enable the people to
have some say . . . with regard to constitutional amendments").
We have stated that the framers crafted art. 48 as a "people's
process. It was intended to provide both a check on legislative
action and a means of circumventing an unresponsive General
Court. . . . It projected a means by which the people could
move forward on measures which they deemed necessary
without the danger of their will being thwarted by legislative
action." *Buckley* v. *Secretary of the Commonwealth*, 371 Mass.
195, 199 (1976). We have also stated that "art. 48 was adopted
in the expectation that all officers concerned would perform the
duties required of them at the proper times." *Opinion of the
Justices*, 334 Mass. 745, 758-759 (1956).

It is not surprising, therefore, that the records of the drafters'
debates indicate that they did not intend a simple majority of
the joint session to have the power effectively to block progress
of an initiative. See 2 Debates in the Constitutional Convention
1917-1918, *supra* at 629 (expressly rejecting such a proposal).[6]
Specifically, words spoken during the debates by one Mr.
Quincy of Boston raised the prospect of what would happen
"if the mandate of the Constitution is disregarded and somebody
declines to carry it out?" *Id.* at 685. Mr. Quincy answered
himself: "I do not believe we need to consider seriously that
contingency or a defiance of the provisions of the amendment
by either of these two branches of the General Court." *Id.* See
*LIMITS* v. *President of the Senate*, 414 Mass. 31, 35 n.6 (1992).

[6]It is significant that the parallel initiative process for a legislative amend-
ment requires an affirmative vote of a majority of the members of the joint
session in order to be referred to the next General Court. Art. 48, The Initia-
tive, IV, § 4. To ignore this distinction would render meaningless the require-
ment of only one-fourth affirmative vote in the case of an initiative
amendment. The framers clearly contemplated that an initiative for
constitutional change, unless unable to command the approval of a one-fourth
minority of two successive General Courts, would be submitted to the people.
See *Opinion of the Justices*, 386 Mass. 1201, 1212 (1982) (one-fourth ap-
proval required as "legislative minority check" to "ensure that initiative
amendments submitted to the people for approval have at least a reasonable
amount of public support").

Enough has now been said about the requirement to vote on the merits to place the proposition beyond serious debate. See, e.g., *Massachusetts Citizens for Marriage* v. *Secretary of the Commonwealth*, 440 Mass. 1033, 1033-1034 (2003); *Opinion of the Justices*, 438 Mass. 1201, 1203-1205 (2002); *LIMITS* v. *President of the Senate*, *supra* at 34-35; *Opinion of the Justices*, 291 Mass. 578, 586 (1935) ("[Final] action [on a proposal for an initiative amendment] must be taken at some time. The mandate is that the joint session shall continue from time to time until final action is taken"). Even counsel conceded at oral argument that it would have been inconceivable to the drafters of art. 48 that the Legislature would refuse to comply with its obligation to vote on a pending amendment that had been introduced by the initiative process. Yet, that is precisely what could happen on January 2, 2007, should a majority of the members of the joint session vote to recess without first taking a roll call vote on the merits of the initiative amendment.

3. The plaintiffs, however, have set forth no viable relief for the asserted violation. Beyond resorting to aspirational language that relies on the presumptive good faith of elected representatives, there is no presently articulated judicial remedy for the Legislature's indifference to, or defiance of, its constitutional duties. We have no statutory authority to issue a declaratory judgment concerning the constitutionality of legislative action, or inaction, in this matter. G. L. c. 231A, § 2 (establishing express exemption from declaratory relief for "the governor and council [and] the legislative and judicial departments"). See *Pawlick* v. *Birmingham*, 438 Mass. 1010 (2002) (declaratory relief unavailable with respect to Senate President's official duties as presiding officer of art. 48 joint session). The remedy of mandamus (once sought by the plaintiffs but since abandoned, see note 4, *supra*) does not lie against the Legislature. See *Milton* v. *Commonwealth*, 416 Mass. 471, 475 (1993); *LIMITS* v. *President of the Senate*, *supra* at 35; *Lamson* v. *Secretary of the Commonwealth*, 341 Mass. 264, 270-271 (1960), and cases cited. Our holding in the *LIMITS* decision is clear: "The only remedy set forth in art. 48 for the failure of a joint session to

act is a direction to the Governor to call a joint session or a continuance of a joint session if the joint session fails in its duty. Article 48 provides no judicial remedy." *LIMITS* v. *President of the Senate, supra* at 34. See *League of Women Voters of Mass.* v. *Secretary of the Commonwealth,* 425 Mass. 424, 431-432 (1997); *Opinion of the Justices,* 334 Mass. 745, 757 (1956) (considering failure of joint session to vote on merits of legislative amendment, concluding "there is no means of compelling a joint session to take any action"). We recognize, as a practical matter, that the Governor's recall power is unavailable here because the joint session, by recessing until the last afternoon of its existence, has effectively neutralized the Governor's constitutional power. Nonetheless, the plaintiffs have not set forth any legally tenable judicial enforcement role in ensuring that the members of the joint session comply with their constitutional duties under art. 48, and, as has been pointed out, case law provides no enforcement mechanisms.

The plaintiffs appear to have abandoned a request asserted in their brief that we retain jurisdiction until after the final day of the 2005-2006 session of the General Court, to consider possible remedial relief should the inaction of the joint session result in a violation of art. 48. For the reasons set forth in this opinion, it is certain that any request for relief against the General Court or the Secretary (such as that initially set forth in the plaintiffs' complaint, see note 4, *supra*) that might be submitted to this court after January 2, 2007, would be equally unavailing. In the absence of an actual affirmative vote of not less than one-fourth of all members of the joint session, the Secretary lacks authority under art. 48 to submit an initiative amendment to the next General Court. See *Massachusetts Citizens for Marriage* v. *Secretary of the Commonwealth, supra*; *League of Women Voters of Mass.* v. *Secretary of the Commonwealth, supra* (purposeful distinction, in this regard, between art. 48's provisions for initiative petition for statutory change and initiative amendment for constitutional change). The language of art. 48 does not permit, by inference or otherwise, a judicial order that the Secretary could permissibly deem the absence of a final vote on the initiative amendment to have the

same effect as an affirmative vote, for purposes of submitting the amendment to the next General Court.

We conclude with these observations. Some members of the General Court may have reasoned, in good faith, that a vote on the merits of the initiative amendment in accordance with the directives of the pertinent provisions of art. 48 was not required by the constitutional text and that their duty could be met by procedural (or other) votes short of a vote by the yeas and nays on the merits.[7] Today's discussion and holding on the meaning of the duty lays any doubt to rest. The members of the General Court are the people's elected representatives, and each one of them has taken an oath to uphold the Constitution of the Commonwealth. Those members who now seek to avoid their lawful obligations, by a vote to recess without a roll call vote by yeas and nays on the merits of the initiative amendment (or by other procedural vote of similar consequence), ultimately will have to answer to the people who elected them.[8] See *League of Women Voters of Mass.* v. *Secretary of the Commonwealth, supra* at 432 (recognizing "the power of the people to elect a sufficient number of legislators who would not defy the requirements of the Constitution so that a joint session would be required to perform its duty"); *LIMITS* v. *President of the Senate, supra* at 35.

4. The case is remanded to the county court for entry of a judgment dismissing the complaint.

*So ordered.*

---

[7]The plaintiffs have submitted to the court copies of articles recently appearing in the news media indicating that at least some members of the 2005-2006 General Court may be confused as to the nature of their constitutional duties under art. 48.

[8]The requirement that a roll call vote be taken at various stages of the initiative amendment process, see art. 48, The Initiative, IV, §§ 3 and 4, ensures the political accountability of individual legislators.